HATTIE ELLIOTT, Appellant, v. W. A. McCORMICK ET AL.—19 S. W. (2d) 654.

Division One, July 30, 1929.

*Heideman & Heideman* for appellant.

*Thompson & Thompson, Guy A. Thompson* and *Frank A. Thompson* for respondent Frank H. Brown.

SEDDON, C.—Action in equity, commenced by appellant (plaintiff below) on September 11, 1924, to set aside a judgment by default rendered against her on January 30, 1923, in favor of respondent, William F. Trautner, in the Circuit Court of St. Louis

County, in a certain suit, commenced by attachment on November 29, 1922, resulting in a sale of Lot 31, in block 4, of Kenwood, a platted subdivision in St. Louis County, on March 5, 1923, under an execution issued to enforce said judgment and levied upon the described realty, and to set aside two deeds and two mortgage deeds of trust, all dated June 2, 1923, conveying title to said realty. ·

Briefly stated, the petition charges that the said judgment rendered against appellant on January 30, 1923, was procured by fraud, committed against appellant, and against the Circuit Court of St. Louis County, in that said William F. Trautner, the plaintiff in the action in which such judgment was rendered, made a false and fraudulent affidavit to the effect that said William F. Trautner has reason to believe, and does believe, that the appellant herein was not a resident of the State of Missouri at the time of the commencement of such action, and that, by reason of such false and fraudulent affidavit, the Circuit Court of St. Louis County was induced to assume jurisdiction of said action and to make an order therein that notice of the commencement of such action be given to the appellant herein by publication, resulting in a judgment being entered by default against the appellant herein, the issuance and levy of an execution under said judgment against the described realty, and the sale of said realty, on March 5, 1923, under said writ of execution, for a grossly inadequate price and consideration, to Alice Trautner, the wife of said William F. Trautner. The petition further avers that the respondents, Alice Trautner and William F. Trautner, by deed of conveyance dated June 2, 1923, purported to convey the title to said described realty to respondents, Charles W. Baker and Eva W. Baker, husband and wife, and that said Charles W. Baker and Eva W. Baker, by deed of conveyance dated June 2, 1923, purported to convey the title to said realty to respondents, W. A. McCormick and Katherine M. McCormick, husband and wife, who, on June 2, 1923, purported to execute two mortgage deeds of trust upon said realty, conveying title thereto to respondent, Frank H. Brown, as trustee for said Charles W. Baker, to secure the payment of certain promissory notes, aggregating $1150, therein described'; and that such instruments and deeds of conveyance were executed, made, and placed of record, in pursuance of a common plan, purpose, intent and design, entered into, formed and existing, by and between the several respondents, to deprive the appellant of her title to said real estate, and that such instruments of conveyance are a fraud upon plaintiff's rights and a cloud upon her title to said real estate.

The respondents William A. McCormick and Katherine McCormick filed a joint answer, averring that they purchased said real estate from the respondents Baker, for a valuable consideration, without knowledge of the falsity of the aforesaid affidavit of William Trautner (if

such affidavit were in fact false and untrue), and that they are innocent of any fraud in the purchase of such real estate. The respondents Charles W. Baker and Eva W. Baker filed a joint answer, averring that they purchased said real property from respondents Alice Trautner and William F. Trautner, for a valuable consideration, and that they sold and conveyed said real property to respondents W. A. McCormick and Katherine McCormick, for a valuable consideration, receiving, as a part of the purchase price of said real estate, the promissory notes and the two deeds of trust aforesaid; that they were innocent purchasers, for value and in good faith, of said real property, and without any fraudulent purpose, intent or design against the appellant, and had no knowledge of any fraud or irregularities in the transaction. The answers of respondents Alice Trautner, William F. Trautner and Frank H. Brown are conventional general denials of the averments of the petition. The appellant filed a conventional reply to the joint answers of respondents McCormick and Baker.

The trial court entered a decree and judgment, finding the issues for the plaintiff and ordering that the proceedings in the attachment suit aforesaid, including the judgment and writ of execution therein, and the several instruments and deeds of conveyance aforesaid, be set aside and for naught held. Timely motions for a new trial were filed by the defendants Brown, Baker and Trautner, upon consideration of which motions the trial court granted said defendants a new trial of the action, and the trial court, of its own motion, granted the defendants McCormick a new trial, and ordered the cause to be reinstated upon the docket of said court, from which order granting a new trial the plaintiff was allowed an appeal to this court.

The evidence herein tends to show that, on November 29, 1922, the respondent William F. Trautner commenced a suit, by attachment, against the appellant, Hattie Elliott, in the Circuit Court of St. Louis County, seeking to recover the sum of $166, claimed to be due and owing to Trautner from Hattie Elliott as a real estate commission for services rendered by Trautner in the sale of two pieces of real property, formerly owned by appellant and located in the city of St. Louis. Concurrently with the commencement of said attachment suit, William F. Trautner filed therein his verified affidavit, in the form prescribed by the attachment statute, stating, among other things, that the affiant "has good reason to believe, and does believe, that the defendant (Hattie Elliott) is not a resident of the State of Missouri." Upon the filing of the petition and the affidavit aforesaid, a writ of attachment issued in said cause, under and by virtue of which writ the real property in controversy in the present action was seized and attached, and the Circuit Court of St. Louis

County made and entered an order of publication, directed to the defendant therein, Hattie Elliott, requiring ·the said defendant to appear in said cause on a day certain to answer the petition of William F. Trautner, which order of publication was duly published in a newspaper of St. Louis county, as provided by law. Upon the filing of proof of publication of said order, and upon the failure of Hattie Elliott to appear in said cause on the day mentioned in said order, the Circuit Court of St. Louis County entered a judgment by default, on January 30, 1923, in favor of William F. Trautner and against Hattie Elliott in accordance with the prayer of the petition, a writ of execution was issued upon said judgment and a levy was made upon the real property in controversy herein, and the said real property was advertised for sale and was sold by the Sheriff of St. Louis County, pursuant to the aforesaid writ of execution, at public sale held on March 5, 1923, to· respondent Alice Trautner, the wife of William F. Trautner, for the price and consideration of $63.96, which sum was applied to the payment of the court costs in the action, and a sheriff's deed, dated March 7, 1923, was executed, acknowledged and delivered to Alice Trautner, and duly recorded upon the deed records of said county, conveying the title to said real property to respondent Alice Trautner. The abstract of record herein recites that "said proceedings (in the attachment suit) are all regular in form."

The evidence further discloses that the real property in controversy is an unimproved lot of land which immediately adjoins. an improved parcel of land owned by the respondents William A. McCormick and Katherine McCormick, upon which latter parcel of land the respondents McCormick had resided for several years prior to the sale, under execution, of the land in controversy. It appears from the evidence of respondents that the respondents McCormick were desirous to purchase the unimproved lot of land in controversy, and that William A. McCormick called upon the respondent Frank H. Brown, who is a real estate agent, in May, 1923, and stated to Brown that he (McCormick) desired to buy the lot in controversy, but that he did not have the ready money to buy the lot, and offered the suggestion that, if Brown would loan McCormick the money to buy the lot, McCormick would pay back to Brown the money so loaned and advanced by Brown in monthly installments. The respondent Brown testified that he examined the title records of St. Louis County in order to ascertain the name of the record owner of the lot, and finding that the record title to the lot was in the name of Trautner, he located Trautner through the means of a· city directory, and opened negotiations with Trautner for the purchase of the lot. The respondent Brown was the president of the Brown Realty Company, which company placed an order with a title company for the examina-

tion of the title to the lot in controversy, resulting in the furnishing by the title company of a preliminary certificate of title, addressed to William F. Trautner, and dated May 31, 1923, wherein the title company certified that it had made an examination of the title to the lot in controversy and "find the title well vested in Alice Trautner." Upon the furnishing of the certificate of title aforesaid, the respondent Brown advanced and loaned to McCormick the sum of $1200, which was the agreed consideration for the sale of the lot, and paid the net proceeds of the sale, amounting to $1023 (after deducting certain expenses and real estate commissions), to Alice Trautner by the check of the Brown Realty Company, drawn on the Citizens' Bank of Maplewood, Missouri, and dated June 12, 1923. Upon the consummation of the sale, the respondents Alice Trautner and William F. Trautner conveyed the lot in controversy to Charles W. Baker and Eva W. Baker, his wife, by warranty deed, dated June 2, 1923, for an expressed consideration of $100 and other valuable consideration. By warranty deed, dated June 2, 1923, Charles W. Baker and Eva W. Baker, his wife, conveyed said lot of land to W. A. McCormick and Katherine M. McCormick for an expressed consideration of $100 and other valuable consideration, and W. A. McCormick and Katherine McCormick, his wife, executed and delivered two deeds of trust, dated June 2, 1923, conveying said lot of land to Frank H. Brown, trustee for Charles W. Baker, one deed of trust being given to secure the payment of a promissory note for $500, and the second deed of trust being given to secure the payment of twenty-six installment notes aggregating $650. The evidence of respondents is to the effect that the deeds of trust aforesaid were given to secure the payment of the money advanced and loaned by Brown to McCormick for the purchase of the lot. All of the instruments of title were acknowledged by the respective parties on June 11, 1923, and were recorded in the office of the Recorder of Deeds of St. Louis County on June 13, 1923. On June 14, 1923, the title company furnished a final certificate of title to the effect that it had examined the title to lot 31, in block 4, of Kenwood subdivision, and "find the title well vested in W. A. McCormick and Katherine McCormick, his wife," subject to the liens of the two deeds of trust aforesaid, dated June 2, 1923. The respondent Brown testified that the several promissory notes secured by the two deeds of trust aforesaid were thereafter sold, for a valuable consideration, to various purchasers, who, as unknown persons, appellant has made parties defendant in the instant action by publication service. He testified further that Charles W. Baker and Eva W. Baker had no pecuniary interest in the transaction, they being used merely as "straw parties," through whom the title to the lot passed from the respondents Trautner to the respondents McCormick. The respondent

William A. McCormick testified that he had paid about $500 in reduction of the indebtedness secured by the deeds of trust, dated June 2, 1923, upon the lot in controversy. There is no evidence in the record herein of any common plan, understanding, conspiracy, or concert of action, between the respondents McCormick, Baker and Brown, on the one hand, and the respondents Trautner, on the other hand, to defraud the appellant, or to wrongfully and fraudulently acquire the title to the lot of land in controversy. The respondents McCormick and Brown testified that they had no acquaintance with William F. Trautner and Alice Trautner prior to the time when the respondents McCormick purchased the lot. The respondent William F. Trautner testified that he did not know the respondents McCormick, at the time of the consummation of the sale of the lot; ''I would not know the man (McCormick) if I met him on the street; I did not meet Mr. McCormick at the time I sold the property to the Brown Realty Company; I did not know whom I was selling the property to.''

The evidence further shows that appellant had resided, with an unmarried daughter, Pearl, at 2519 West University Street, in the city of St. Louis, Missouri, for some thirty years prior to the year 1922. Appellant's daughter, Pearl, was married in September, 1921, to Alden Mullen, and, after their marriage, the daughter and her husband continued to reside in appellant's home at 2519 West University Street until July or August, 1922, when they removed to a home of their own at 3200 Pennsylvania Avenue, in South St. Louis. Appellant sold her home property on University Street in September, 1922, together with a part of her household furniture, and the remaining part of her household furniture was removed at that time to the home of her daughter, Mrs. Mullen. Appellant had a son, George Elliott, and a married daughter, Mrs. Ethel Colvin, both of whom resided in Berkeley, California. Appellant testified that she went to Berkeley, California, in January, 1922, to nurse and attend her daughter, Mrs. Colvin, who then was critically ill with influenza, and that she returned to St. Louis for a few months in the summer of 1922, remaining in St. Louis until the latter part of October, 1922, when she again went to her daughter's home in Berkeley, California, where she remained for more than a year, and until her return to St. Louis, Missouri, in May or June, 1924. Appellant testified: ''I left for California in January, 1922; that was my first trip to California. I bought a one-way (railroad) ticket, and stayed there until the latter part of May or first part of June, 1922, when I returned (to St. Louis), and at the time when I left California I purchased a round-trip (railroad) ticket from California to St. Louis and from St. Louis to Berkeley, which ticket expired on the last day of October, 1922. I returned to St. Louis because I wanted to sell my

property; my daughter was going to move out of that place (on University Street), and I could not leave the place without anybody being there. . . . I told Mr. Trautner I had a round-trip ticket to California, just to go back to my sick daughter, which would run out in October. . . . I returned to California in October, 1922, and remained there until May or June, 1924. I returned (to St. Louis) in June, 1924, because it is my home here.''

Appellant's daughter, Mrs. Pearl Mullen, testified: ''Mr. Trautner asked mother what she intended to do, and mother told him she was going to California. He asked her, in my presence, 'Do you intend to make your home there'? and she said, 'No,' but she did not go into details about my sister being sick; she did not tell him that, at that time, my sister had been awfully sick and she was there caring for her. Mr. Trautner was there twice when I was present. . . . During the last conversation with Mr. Trautner he asked mother what she intended to do after she sold her property, and she told him she intended to go back to California, she had a round-trip ticket and intended to go back to California, and she did not state how long she intended to stay there, because she did not know how long she was going to stay; she did not know herself, when she went back, how long she was going to stay. That conversation took place at the house during the second visit of Mr. Trautner.''

Appellant's daughter-in-law, Mrs. George Elliott, testified: ''When she (appellant) was not at my house in Berkeley, California, she was at Mrs. Colvin's home, and any time she left my house she would go back to Mrs. Colvin's home; she made her home with Mrs. Colvin.''

David Saphir, a witness on behalf of respondents, testified: ''I met Mrs. Hattie Elliott, the plaintiff (appellant), in buying her property on University Street, in the summer of 1922, at 2519 University Street, at her house; I talked to her relative to the purchase of the house; she said she wanted to sell the house because they are leaving the State; they were leaving for California; she offered to sell the furniture to me, but I was not interested in the furniture.''

The respondent William Trautner testified: ''On July 13 or 14, 1922, we (appellant and witness) had a general discussion about her property, and she (appellant) stated that she had a round-trip ticket which expired some time in October (1922), the latter part of October, from California to St. Louis and return, and she was very anxious to dispose of her property before she had to go back to California, and for that reason she wanted to get it off her hands so that she would not be thinking of it when she went back there; . . . Mrs. Elliott never told me why she was going to California; she told me she was going there to live; . . . there was not very much said about it; she was very anxious to get rid of her property,

and then she left for California; she was anxious to sell it; after I learned that Mrs. Elliott had sold the University Street property, I made some effort to locate her; I inquired of the neighbors, and, furthermore, I went down to the Recorder's office in the city of St. Louis to find out if they could locate where Mrs. Elliott lived, and they had no record of it; I inquired of one neighbor across the street; her name is Mrs. Hays, I think.''

The appellant testified that she had owned the lot in controversy for nineteen or twenty years, and that the reasonable value of the lot was $1800; that she knew nothing about the attachment suit being brought against her by respondent Trautner, or that a judgment had been entered in said action, or that the lot had been sold under a writ of execution upon said judgment. She testified further that, upon her return from California in the early summer of 1924, she paid the taxes which had been assessed against the lot for the years 1922 and 1923, and appellant introduced in evidence the tax receipts, which were stamped "paid" on June 16, 1924. Thereafter, appellant learned that respondents McCormick were claiming to own the lot of land in controversy, and commenced the present action in equity to set aside the several muniments of title on September 11, 1924.

I. Appellant assigns error on the part of the trial court in granting the respondents a new trial of the instant action in equity, the appellant claiming that the evidence herein is amply sufficient to support the decree, originally entered by the trial court in her favor, setting aside the judgment and the proceedings in the attachment suit brought against appellant by the respondent William F. Trautner, including the judgment and the writ of execution therein, and setting aside the several subsequent instruments of conveyance, dated June 2, 1923, and revesting the title to the lot of land in controversy in appellant. Respondents, on the other hand, take the position that the evidence herein is wholly insufficient, in character and weight, to entitle the appellant to the equitable relief which she seeks by the instant action; that the decree, originally entered by the trial court in favor of appellant, was against the weight of the evidence, and was against the law applicable to the evidence; and, therefore, that the trial court rightly granted a new trial of the action.

Appellant urges that the evidence herein shows that she was only temporarily absent from this State at the time of the commencement of the attachment suit brought against her by William E. Trautner, with the intention on her part to return to her domicile in this State, and that it was never her intention to change her domicile and residence from Missouri to California; that the absence of a person from his domicile for a temporary purpose, whether such absence be

for a long or a short period, of time, does not change the established domicile and residence of the person; and that whether a person, who is shown to have had an established domicile and residence in this State, has changed his domicile and residence to another and foreign state, is wholly a matter of the intention of the person whose domicile and residence is brought in controversy, as such intention is evidenced by the acts and statements of such person. Hence, appellant argues that the evidence herein is amply sufficient to show that the affidavit in attachment, made by the affiant, William F. Trautner, to the effect that said affiant "has good reason to believe, and does believe, that the defendant (Hattie Elliott) is not a resident of the State of Missouri," was false and untrue, and was fraudulently made for the purpose of inducing the Circuit Court of St. Louis County to assume jurisdiction of the attachment suit, and amounted to the commission of a fraud upon the Circuit Court of St. Louis County in the procurement of the writ of attachment against the appellant's real property, and in the procurement of the judgment in said attachment suit, the issuance of a writ of execution upon said judgment, and the sale of appellant's real property thereunder. In support of her position on the aforesaid question, appellant cites the rulings of this court in Greene v. Beckwith, 38 Mo. 384; Chariton County v. Moberly, 59 Mo. 238; and In re Lankford's Estate, 197 S. W. 147; and the ruling of the Springfield Court of Appeals in Martin v. Barrett, 204 S. W. 410.

The Greene, Chariton County and Martin cases, supra, were all suits by attachment, brought upon the statutory ground that the defendant, at the time of the commencement of such suit, was a nonresident of this State. In each of those cases, the defendant appeared in the action and filed a statutory plea in abatement, specifically denying that he was a non-resident of this State at the time of the commencement of the action, thereby raising the issue of the truth of the alleged ground of attachment, which issue of fact was tried and submitted to a jury, or to the court, sitting as a jury, before a trial was had upon the merits of the main suit or action, and the verdict and finding upon such issue of fact was in favor of the defendant. In other words, in each of the cited cases, the issue of the defendant's non-residence was timely raised by a statutory plea in abatement, and such issue was tried and determined as an issue of fact, upon proper instructions or declarations of law, and the finding, or verdict, of the triers of the fact was held to be conclusive on the question of the defendant's domicile and residence. In re Lankford's Estate, supra, was a proceeding originally commenced in the Probate Court of Saline County, Missouri, under the collateral inheritance tax statute of this State, for the purpose of assessing the collateral inheritance tax against the property and estate

of Lankford, deceased, and the question, or issue, whether deceased was a resident of Missouri at the time of his death was tried and submitted as an issue of fact. The cited cases, in our opinion, have no bearing or application upon the precise issues now before us, presented by appellant's bill in equity herein, namely, whether the affidavit in attachment, made by respondent Trautner, was false and was fraudulently made, and whether the filing of such affidavit in the attachment suit was a fraud upon the Circuit Court of St. Louis County, whereby said court was misled and wrongfully induced to assume jurisdiction of the attachment suit, and whereby a judgment was fraudulently procured by Trautner.

The appellant herein, by the present independent equitable action, seeks to set aside the judgment and the proceedings had, made and entered of record (all of which are conceded to be regular in form) in the attachment suit of William F. Trautner against Hattie Elliott, in the Circuit Court of St. Louis County, upon the alleged ground of fraud, committed by said Trautner, in the procurement of the judgment in the attachment suit. In such an independent equitable action, the presumption is always in favor of the verity and validity of the judgment therein attacked, and of the regularity and validity of the proceedings leading to the rendition of such judgment, and the burden rests upon the party seeking equitable relief against such judgment to establish the alleged fraud in the procurement of such judgment by evidence and proof that is so cogent, clear, strong and convincing as to leave no reasonable doubt of such fraud in the mind of the chancellor.

In 34 Corpus Juris, 494, it is said: "On a bill in equity for relief against a judgment at law, presumptions will be indulged in favor of the jurisdiction of the court, the regularity of its proceedings, and the validity of the judgment. . . . Fraud in procuring the judgment will neither be presumed nor inferred from circumstances which are not inconsistent with good faith. In general the burden of proof is upon the party demanding relief against the judgment to establish by sufficient evidence all the facts on which he relies as the basis of his application." And, in 34 Corpus Juris 496, it is further said: "To entitle a complainant to relief in equity against a judgment on the ground of fraud, the proof in support of the allegations of fraud must be clear, distinct, and certain, and, according to some decisions, so cogent and strong as to leave no reasonable doubt." Our own court, en banc, in Lieber v. Lieber, 239 Mo. 1, 31, has thus clearly stated the rule of evidence as applied in this State: "The law is well settled here and elsewhere, that a court of equity will in a direct proceeding grant relief against a judgment or decree procured by fraud *provided the fraud is established by clear, strong and cogent evidence, leaving no room for reasonable doubt*

*of its existence.''* [Italics ours.] The foregoing rule has been reannounced, followed and applied by this court, in McDonald v. McDaniel, 242 Mo. 172, 176; McFadin v. Simms, 309 Mo. 312, 331; and Reger v. Reger, 316 Mo. 1310, 1327.

The statute (Sec. 1730, R. S. 1919), which is a part of our Code of Civil Procedure, requires that the affidavit in attachment shall be made by the plaintiff (in the attachment suit), or by some person for him, who shall state, among other matters, "that he *has good reason to believe, and does believe,* in the existence of one or more of the causes which, according to the provisions of Section 1725 of this article, would entitle the plaintiff to sue by attachment." Section 1725, Revised Statutes 1919, prescribes fourteen separate and distinct grounds, or causes, for which the plaintiff in any civil action may have an attachment against the property of a defendant in such action, the first ground prescribed in said section of the statute being "where the defendant is not a resident of this State." It is readily noticeable, from the language of Section 1730, supra, that the statute does not require that the maker of the attachment affidavit shall positively, certainly, indubitably, or infallibly, state in the affidavit the existence of the ground or cause of attachment, which, in this particular instance, was that "the defendant is not a resident of this State;" on the contrary, the statute only requires that the maker of the affidavit shall state therein *"that he has good reason to believe, and does believe,* in the existence" of the ground or cause of attachment. The affidavit made and filed by William F. Trautner in the attachment suit was in the exact form and language prescribed by Section 1730 of the statute. In his petition in the attachment suit, William F. Trautner averred that "the defendant (Hattie Elliott) is a nonresident of said State of Missouri, and resides, to the best of his knowledge, in the State of California."

The evidence herein, most of which was adduced by the appellant, shows that the appellant left the State of Missouri in January, 1922, and went to the State of California, where she stayed in the home of her daughter, Mrs. Colvin, until May or June, 1922, when she returned to St. Louis, Missouri; that she purchased a round-trip railroad ticket from Berkeley, California, to St. Louis, Missouri, and from St. Louis to Berkeley, California, which ticket entitled her to return railroad transportation to Berkeley, California, until the last day of October, 1922; that, while appellant was in St. Louis, she sold her domicile, or home, in St. Louis, together with a part of her household furniture, in September, 1922; that she left the State of Missouri in the latter part of October, 1922, and returned to Berkeley, California, where she continuously remained until May or June, 1924, a period of nineteen or twenty months, before again return-

ing to the State of Missouri. During such period of nineteen or twenty months, according to the testimony of appellant's daughter-in-law, Mrs. George Elliott, the appellant "made her home with Mrs. Colvin," a daughter of appellant, in Berkeley, California. According to the testimony of Mrs. Pearl Mullen, another daughter of appellant, the appellant, in the summer of 1922, told William F. Trautner that "she intended to go back to California; she had a round-trip ticket and intended to go back to California, and she did not state how long she intended to stay there, because she did not know how long she was going to stay; she did not know herself, when she went back (to California), how long she was going to stay." The respondent Trautner testified that appellant told him that "she was very anxious to dispose of her property before she had to go back to California, and for that reason she wanted to get it off her hands so that she would not be thinking of it when she went back there; she told me she was going there to live." There is evidence that appellant told one David Saphir that she wanted to sell her home place in St. Louis because she was leaving the State of Missouri, and was going to California. In view of the facts and circumstances in evidence in the present action, and in view of the statements made by appellant prior to her departure from St. Louis, Missouri, for the State of California in October, 1922, which was at least a month before the commencement of the attachment suit by Trautner, we think that Trautner well may have been warranted in honestly believing that appellant had abandoned her former domicile and residence in Missouri, and had removed her domicile and residence to the State of California. Certainly, it cannot be said with certitude or assurance by this court, or by the learned trial chancellor below, that such facts and circumstances, if known to Trautner, did not justify his making the sworn statement, in the attachment affidavit. that he "has good reason to believe, and does believe, that the defendant is not a resident of the State of Missouri.

The evidence herein, in our opinion, is not so clear, strong, cogent and convincing as to leave no reasonable doubt of the alleged fraud, on the part of respondent, William F. Trautner, in the procurement of the judgment in the attachment suit; wherefore, the appellant has failed to establish, by that degree and character of proof as is required in this kind of equitable action, the averment of her petition that the judgment in the attachment suit was procured by the fraud of Trautner, committed upon the Circuit Court of St. Louis County; and, having failed to establish the alleged fraud in the procurement of said judgment, the appellant is not entitled to the relief, in equity, against said judgment which she seeks in the present independent action.

II. The appellant's petition avers that the several instruments of conveyance, dated June 2, 1923, whereby the title to the lot in controversy was conveyed to the defendants, McCormick, Brown and Baker, "were executed, made, had and procured and placed of record by defendants in pursuance of 'a common plan, purpose, intent and design, formed and existing between all the defendants herein, to deprive plaintiff herein of her title to said real estate." We have given close and scrutinous study and analysis to the evidence herein, and we find no evidence in the record before us tending to show the existence of any common plan, purpose or design, or of collusion, conspiracy and concert of action, by and between the defendants McCormick, Brown and Baker, on the one hand, and the defendants Trautner, on the other hand, to fraudulently and wrongfully deprive the appellant of the title to the land in controversy. Nor is the evidence sufficient, in our opinion, to give rise to a reasonable and fair inference that there existed, by and between the several defendants, any common plan, purpose, collusion, or conspiracy to deprive appellant of the title to said real estate. There is no evidence tending to show that the respondents McCormick, Baker and Brown had any acquaintance, dealing, or relation of any kind with the respondents Trautner, until the consummation of the sale of the lot by Trautner and his wife to McCormick and his wife. The respondent Trautner testified that he was unacquainted with the respondents McCormick, and "would not know the man (McCormick) if I met him on the street." The respondents McCormick and Brown likewise testified that they had no acquaintance with respondents Trautner, prior to the consummation of the sale of the lot in controversy. The appellant offered no evidence to the contrary.

The applicable rule of evidence, in cases where a fraudulent conspiracy is alleged and relied upon as a ground for the intervention of a court of equity, is thus clearly and positively announced in Jones v. Nichols, 280 Mo. 653, 664: "The burden of proof in such cases is upon the plaintiff to make out his case by clear and convincing evidence. While fraud may be inferred from facts and circumstances, it is never to be presumed without or against the evidence. And where the transaction under consideration may as well consist with honesty and fair dealing, as with a fraudulent purpose, it is to be referred to the better motive. [Garesche v. MacDonald, 103 Mo. 1; Hardwicke v. Hamilton, 121 Mo. 465; Warren v. Ritchie, 128 Mo. 311.]"

Viewing the evidence herein in the light of the settled rule in such cases, we think that the appellant has failed to establish the averment of her petition that the instruments of conveyance dated June 2, 1923, "were executed, made, had and procured by the defendants in

pursuance of a common plan, purpose, intent and design, formed and existing between all the defendants herein, to deprive plaintiff (appellant) of her title to said real estate.'' Therefore, the finding and decree of the trial court, originally entered in favor of the appellant, was without sufficient evidence to support such finding and decree, and the learned trial court did not err in granting the respondents a new trial of appellant's action.

II. Appellant insists, however, that the evidence indisputably shows that the lot in controversy was sold to respondent Alice Trautner, wife of respondent, William F. Trautner, at sheriff's sale, under a writ of execution issued upon the judgment in the attachment suit brought against appellant by said William F. Trautner, for the mere pittance and sum of $63.96, a price and consideration which is claimed by appellant to be so grossly inadequate as to shock the conscience of a court of equity, and that such grossly inadequate and unconscionable consideration, in and of itself, is a badge of fraud; and it is furthermore urged by appellant that the sheriff's deed, which purported to convey the title to the lot in controversy to respondent Alice Trautner, appeared of record upon the deed records of St. Louis County, and in the chain of title to such lot, thereby importing constructive, if not actual, notice and knowledge to the respondents McCormick, Brown and Baker of the alleged fraud of the respondents Trautner, and of the grossly inadequate and unconscionable consideration paid by the respondent Alice Trautner, for such lot at the execution sale. Wherefore, appellant claims that the respondents McCormick, Brown and Baker are not innocent and bona-fide purchasers of said real property for a valuable consideration and without notice of infirmity in the title to said realty.

Appellant, in support of her claim and contention just stated, places reliance upon the rulings of this court announced in Guinan v. Donnell, 201 Mo. 173; Mangold v. Bacon, 237 Mo. 496; Van Graafieland v. Wright, 286 Mo. 414; and State ex rel. v. Davidson, 286 S. W. 355. In none of the cases cited and relied upon by appellant, however, does it appear that the purchaser (at the execution sale sought to be set aside in equity for gross inadequacy of consideration) had thereafter sold and conveyed the real property in controversy to a bona-fide vendee; consequently, none of the cited cases involved the rights and title of a bona-fide vendee of the purchaser at the execution sale.

A majority of this court, en banc, thus announced the rule or doctrine in Mangold v. Bacon, 237 Mo. 496, 521: ''We think the conservative and better doctrine is that a court of equity in Missouri, acting with caution and only in an aggravated case and when no aid

from other equitable considerations is at hand, may set aside a sheriff's deed on the sole ground of a consideration so grossly inadequate as to shock the conscience." But Judge LAMM, the learned author of the majority opinion of this court in the Mangold case, was cautious to preface his opinion with the following significant observation (1. c. 506): *"As a foreword, it is not amiss to say that we are not dealing in this case with the vendee of a purchaser at a tax sale who may hold under a warranty deed or for full value."* And, in speaking to the question whether gross and unconscionable inadequacy of consideration, in and of itself, and standing alone, constitutes sufficient ground in equity to set aside a sheriff's deed under writ of execution, the learned author of the majority opinion was again cautious to say (1. c. 520): "The question might arise under many different conditions. To avoid *obiter*, what we say at this time must be taken as strictly applicable to a case like the one at bar." In other words, the majority of this court, en banc, by the opinion in the Mangold case, were cautious to limit and restrict the extent and application of the doctrine therein announced to a case wherein the title to the real property in controversy remained and stood of record (at the time of such opinion) in the purchaser at the execution sale, and wherein such title had not been sold and conveyed (by the purchaser at the execution sale) to a vendee of such purchaser, for a valuable consideration.

In the Van Graafieland case, supra, while it appeared that the purchaser at the execution sale had purported and pretended to convey the land therein in controversy to third parties, yet such third parties were made defendants in the equitable action to set aside the execution sale, and, by their answers filed in said action, such third parties disclaimed any interest or title under the deeds from the purchaser at the execution sale, and the purchaser at the execution sale, by his answer, admitted that such conveyances were made without consideration and "for the purpose of enabling the defendant to secure from a subsequent purchaser whatever value the defendant's equity in the property may be worth;" and the court furthermore found, from all the evidence in the case, that such deeds (to third parties) were without consideration, and were made and received with full knowledge of all the facts, and for the purpose of assisting the purchaser at the execution sale to defraud the plaintiffs out of their property. Again, the writer of the opinion in the Van Graafieland case was cautious to say (1. c. 433): "Before closing we desire to say that we have not determined in this case that inadequacy of consideration alone is ground for setting aside a sheriff's sale in equity. If such a case can be, where the property is of great value and the consideration simply nominal and the judgment debtor is the purchaser, we have not endeavored to consider it."

The appellant has not directed our attention to any decision of this court wherein the rule or doctrine announced in the Mangold and Van Graafieland cases has been extended or applied to a bona-fide vendee of the purchaser at an execution or judicial sale; and, upon our own research, we have found no decision of this court applying or extending the doctrine announced in the cited cases to persons or parties other than the original and immediate purchaser at the execution sale.

In 23 Corpus Juris, 766, it is said: "The inadequacy of the bid at the execution sale cannot be invoked to destroy the title of a remote purchasee on the ground that it *per se* put him on notice." The identical question was presented to the Supreme Court of Mississippi for decision in Hart v. Gardner, 81 Miss. 650, 656, wherein that court announced: "We cannot subscribe to the doctrine advanced that, in an attack like this on the title of a remote vendee, the inadequacy of the bid at execution sale can be invoked to destroy his title on the ground that this, *per se,* put him on notice." In 35 Corpus Juris, 94, the rule is stated: "A bona-fide grantee for value from a purchaser at a judicial sale is not affected by irregularities, mistakes, or fraud, of which he did not have notice, although as to the grantor the sale might have been set aside."

In the instant case, we find no evidence in the record before us that the vendees of Alice Trautner and her husband, William F. Trautner, had any actual knowledge of the alleged fraud of William F. Trautner in the procurement of the judgment in the attachment suit brought by Trautner against the appellant, Hattie Elliott, and, as we have said, we find no evidence in the record that the respondents McCormick, Brown and Baker colluded, connived or conspired with the respondents Trautner, to fraudulently and wrongfully deprive appellant of the title to the lot of land in controversy. The evidence strongly tends to show that the respondents McCormick, as vendees of the respondents Trautner, paid a valuable consideration of $1200 for the lot in controversy; and that they caused the title to the lot to be examined, and a certificate of title to be furnished by a title company, in reliance upon which certificate of title they purchased the real property, in apparent good faith, for the valuable consideration aforestated, receiving a warranty deed conveying the title thereto. The title of the respondents McCormick cannot be set aside, annulled and destroyed without extending and applying the doctrine announced by this court in the Mangold and Van Graafieland cases, supra, to the bona-fide vendees of a purchaser at an execution sale; which is farther than this court manifested and declared its intention to apply the doctrine announced in those cases. We are not disposed to extend and apply the doctrine announced in the Mangold and Van Graafieland cases to persons other than the original and

immediate purchaser at the execution sale, where the ground invoked for setting aside and destroying the title of such persons is bottomed solely and singly upon constructive notice, derived from the chain of title, of mere inadequacy in the amount of the bid made, and of the consideration paid, by the original and immediate purchaser at the execution sale. To extend the application of the doctrine announced in the Mangold and Van Graafieland cases to bonafide vendees of a purchaser at execution or judicial sale would be to grievously unsettle and disturb, and, in effect, to utterly destroy, the security and integrity of real estate titles grounded upon judicial or execution sales, regular upon the face of the record, and thereby to work a greater and more extensive hardship and injury upon landowners generally, in this State, than will be accomplished by relieving an individual party of a seeming hardship in a single, isolated case.

We are of the opinion that the evidence herein is insufficient to establish the averments of fraud set forth in the appellant's petition as ground for the equitable relief sought by appellant, and therefore the learned trial court did not err in setting aside the decree originally entered in favor of the appellant, and in granting the respondents a new trial of the action. The order of the circuit court granting a new trial must be affirmed, and the cause remanded to the circuit court for retrial. It is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.