STATE OF MISSOURI at the relation of W. H. STERLING, Relator, v. HOPKINS B. SHAIN ET AL., JJ.—129 S. W. (2d) 1048.

Division One, June 14, 1939.

892

*Johnson, Garnett & Quinn* for relator.

*J. R. Rose* and *W. J. Gilwee* for respondents.

DOUGLAS, J.—This is an original proceeding in certiorari to review for conflict with our decisions the opinion of the respondents

in Anderson Motor Service Company v. Sterling (Mo. App.), 121 S. W. (2d) 275. That was an action in equity to set aside a default judgment obtained at a prior term by the defendant Sterling, the relator in this proceeding, against the plaintiff company and to enjoin the enforcement of the judgment. ██ The trial court found for the plaintiff and set aside the judgment, which finding was affirmed by the respondents in the opinion under review. As we are limited to the facts stated by the respondents in determining the question of conflict, we shall set them out precisely as they appear in the opinion.

"The following pertinent facts are not in dispute. Defendant in this suit, who was plaintiff in the former suit, sued for damages growing out of breach of contract. The petition was regularly filed and personal service had. The last day for pleading in the May Term of court, to which the cause was returnable, was May 15. No answer or other pleading was ever made of record and the court records at all time showed defendant in that case to be in default. On May 22 plaintiff moved for interlocutory judgment alleging no pleadings had been filed, that the time for filing same had elapsed, that there had been personal service of process, and that under the rules and practice of court no extension of time for pleading had been asked or granted. Evidence was heard on the motion and the above facts found and entered of record by judgment of the court; and the court further found defendant to be in default.

"Thereafter, the cause was listed for trial, and a special notice of its setting for final hearing was published, day by day, in the Daily Record, a paper of general circulation among lawyers in Kansas City, and used for such purposes by the courts and the profession, until the 7th day of June, 1933. On that day the court rendered its final judgment in the sum of $2730 and costs. Notice of the entry of the judgment was published in the Daily Record. After the adjournment of the May Term of the court plaintiff in the original suit caused an execution to be issued on this final judgment, and the defendant therein brought the present action to be set aside the judgment.

"It is not claimed, in the present action, that this defendant was guilty of any fraud or deceit in obtaining the final judgment now attached. The sole ground upon which plaintiff bases its claim for relief is its claim that a general denial answer in the original suit was prepared, and taken to the clerk's office for filing, but, through negligence of the clerk, was not placed among the papers or made a matter of record. It is admitted that, in all other respects, the proceedings upon which the judgment is based are free from any irregularity.

"At the trial of this cause, plaintiff rested its proof of the allegation that an answer in the original case was left with the clerk for filing upon the uncorroborated oral testimony of the attorney for the Anderson company, who testified that he prepared the answer, gave it to

one of the stenographers in the prosecutor's office (he being an assistant prosecuting attorney) for transcribing in typewritten form; that he then took the original and court copy of the answer, and a third copy designated as his own office copy, to the office of the circuit clerk; that he arrived at the clerk's office some time in the afternoon of May 15, 1935, probably about two o'clock; that he delivered the original and court copy of the answer to some person who was back of the filing counter in the clerk's office, and, at the same time, requested that his office copy be marked with the filing stamp of the clerk; that the person to whom he thus delivered the papers did place a filing stamp on the office copy; that he then left, and does not know whether or not the person to whom the original and court copy of the paper was delivered, ever actually placed the filing stamp thereon. The office copy, with a filing stamp on it bearing date May 15, 1935, was offered in evidence as a part of his testimony. No other evidence in support thereof was offered.

"He further testified that the reason he had his office copy marked with the filing stamp was because he had, while in the employ of the Kansas City Public Service Company some years previously, formed the habit of having his office copy of all court papers marked with the filing stamp at the time of filing the originals. It is his testimony that such was his custom and habit. Under cross-examination, however, his attention was called to the fact that the bill of complaint in the case at bar was not so handled, his office copy being shown to him, and it being shown that such office copy was not so marked. In addition, it was shown that his office was on the same floor of the court house as the floor where the trial was then in progress, but he refused to produce any office copy of any paper which he might have filed heretofore in order that the court might have before it evidence of the custom to which he had testified.

"There was evidence to the effect that the paper purporting to be the office copy of the answer bears many evidences of being the work of an amateur rather than the work of an experienced stenographer. The filing stamp appearing on the reverse side thereof shows that it was made from a stamp inked with a blue colored ink, which was dim and dry from non-use. It also shows that there is a maladjustment of the figures '1' and '5' in the figure '15' in the date of May 15, 1935. The figure '5' is slightly *lower* in alignment than the figure '1'.

"Defendant produced in evidence a list of the case numbers of every case in which pleading had been filed at the filing window of the clerk's office on May 15, 1935. From that list, a random selection of some dozen cases was made in the presence of the court, and the original jackets containing the papers therein were then produced from the clerk's office. From these admittedly genuine papers, it is argued that, on every paper filed on that day, there was a marked

difference between the color of ink used on the filing stamp used thereon, and the color of the ink on the filing stamp appearing on the purported office copy here in question; and, on all of the admitted filings, there was also a maladjustment in the alignment of the figures in the date line, but, it is urged, in every case, the figure '5' is slightly *higher* in alignment than the figure '1'. This testimony was amplified by an expert on disputed documents, produced as a witness by defendant.''

The respondents, in affirming the judgment on this evidence, hold in effect that a solemn record of the court which imports absolute verity may be impeached and set aside after the term at which it was made on what could hardly be called substantial evidence. An appellate court, as a matter of law, passes on the question of substance but we are not bound in determining the question of conflict by the conclusion reached by respondents in applying the law to the facts where we have reached a different conclusion in applying the law to a similar state of facts. [State ex rel. City of Jefferson v. Shain et al., JJ., 344 Mo. 57, 124 S. W. (2d) 1194.] Generally, the question whether the evidence was sufficient and substantial is one for the trial court and for the Court of Appeals in its determination of the case on its merits and is not one to be decided by this court in this type of proceeding. Such is the rule because in a case of this character we are precluded from examining *de novo* the evidence of witnesses as contained in the record and are limited to what is stated in the opinion. [State ex rel. Dunham v. Ellison, 278 Mo. 649, 213 S. W. 459.]

However, the learned author of the opinion has carefully set out in full the evidence below and expressly stated that there was no evidence offered by the plaintiff in addition to what was related in the opinion. The only proof that an answer was filed was the uncorroborated, oral testimony of the attorney for the plaintiff company. The stenographer who typed the answer was not called as a witness. The person in the clerk's office with whom the answer was filed and who marked the copy retained by the attorney with the filing stamp, was not called. No copy of any pleading, not even a copy of the petition in the very case, was produced by the attorney to support his testimony that it was his custom to have his office copy of all court papers marked with the same file stamp imposed on the original. Comparison of the file stamp on the office copy of the answer retained by the witness with the stamps on pleadings properly filed in the court on the date in question tend to deny that the copy was stamped on the date the stamp indicated. Even in view of these circumstances respondents conclude that the evidence they have detailed in their opinion is adequate to support the judgment of the trial court.

The respondents' decision is in conflict with our latest controlling decision involving similar facts which ruled that an action in equity

to set aside a default judgment entered because of the mistake of an officer of the court in failing to record the filing of an answer must be based on *sufficient* and *substantial* evidence. [Krashin v. Grizzard, 326 Mo. 606, 31 S. W. (2d) 984.]

It should be noted in that case we required evidence *both* sufficient and substantial. In defining what is meant by sufficient evidence in an early case, we adopted the following from Greenleaf: "The true question, in trials of fact, is not whether it is possible that the testimony may be false, but whether there is sufficient probability of its truth, that is, whether the facts are shown by competent and satisfactory evidence. By satisfactory evidence, which is sometimes called *sufficient* evidence, is intended that amount of proof which ordinarily satisfies an unprejudiced mind beyond a reasonable doubts." [Kenney v. The Hannibal & St. Joseph Railroad Co., 70 Mo. 243.] The same degree of proof, differently phrased, is required in an equitable action to set aside a judgment because of fraud committed in the procurement of such judgment. In such cases we rule that fraud must be established by evidence that is so cogent, clear, strong and convincing as to leave no reasonable doubt of such fraud in the mind of the chancellor. [Elliott v. McCormick, 323 Mo. 263, 19 S. W. (2d) 654; Lieber v. Lieber, 239 Mo. 1, 31, 143 S. W. 458.] An eclectic definition of the evidence required may be stated to be the amount of proof which satisfies an unprejudiced mind to the degree of certainty required in the particular case under consideration.

The evidence does not meet these tests and in holding that it was merely substantial, respondents' opinion is in conflict. Furthermore, respondents hold that the trial court has a wide discretion in setting aside the default judgment and until that discretion is abused it will not intervene. This is true only when timely application has been made at the *same* term in which the judgment was rendered. To hold that setting aside a judgment at a subsequent term is discretionary is also in conflict with our decision that such an action must be based on evidence which is sufficient and substantial, or otherwise described as clear, cogent and convincing.

For the reasons stated, the opinion and record should be quashed. It is so ordered. All concur, except *Hays, P. J.,* absent.