894 F.Supp. 1337 (1995)
ENTERPRISE BANK, Plaintiff,
v.
MAGNA BANK OF MISSOURI, Defendant.
No. 4:94CV01411 GFG.
United States District Court, E.D. Missouri, Eastern Division.
August 16, 1995.
*1338 *1339 *1340 John S. Sandberg, Lyndon P. Sommer, Sandberg and Phoenix, St. Louis, MO, for plaintiff Enterprise Bank.
Douglas R. Sprong, Paul N. Venker, Armstrong and Teasdale, St. Louis, MO, for defendant Magna Bank of Missouri.

MEMORANDUM AND ORDER
GUNN, District Judge.
This matter is before the Court on various motions, including Magna Bank's ("Magna") motion for summary judgment. Document 14. For the reasons set forth below, the motion for summary judgment is granted.
Enterprise Bank ("Enterprise") commenced this action in the Circuit Court for the City of St. Louis, launching a collateral attack on the validity of a prejudgment attachment obtained by Magna of property then owned by Gustave and Laura Saettele ("the Saetteles") in Landmark Bank v. Saettele, No. 91-787C(5) (E.D.Mo.).[1] Magna removed the action to this Court.
In the amended complaint, Enterprise alleges that (1) Mo.Rev.Stat. § 521.010(1), which authorizes prejudgment attachment based solely on an individual's out-of-state residence, violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Privileges and Immunities Clause of article IV, § 2 of the United States Constitution, and the corresponding provisions of the Missouri Constitution; (2) the prejudgment attachment cannot be sustained under Mo.Rev.Stat. § 521.010(5), which allows for attachments based on exigent circumstances; (3) the attachment was ineffective as to Landmark stock owned by the Saetteles because Missouri law at the time did not permit attachment of stock by garnishment; and (4) the prejudgment attachment deprived Enterprise of its Due Process right to satisfy its judgment against the Saetteles.
A brief summary of the procedural history of this case is necessary. On March 29, 1991, Enterprise initiated an action in this Court against the Saetteles. Enterprise Bank v. Saettele, No. 91-616C(6) ("Enterprise action").[2] On April 15, 1991, Landmark Bank also filed suit against the Saetteles in this Court. Landmark Bank v. Saettele, No. 91-787C(5) ("Landmark action").[3] On September 20, 1991, Landmark moved for and obtained a prejudgment attachment of the Saetteles' property. Landmark issued garnishments in aid of attachment to various entitles, including Oppenheimer & Co., Inc. Oppenheimer & Co. maintained a securities trust account owned by Gustave Saettele, which included cash reserves and shares of Landmark Bancshares Corporation stock. Pursuant to the garnishment, the United States Marshal levied Oppenheimer & Co. on September 26.
Thereafter, on December 17, 1991, Enterprise procured a judgment of over $800,000 against the Saetteles, which it swiftly attempted to satisfy.[4] On January 3, 1992, *1341 Enterprise obtained a lien on real property the Saetteles owned in St. Louis County. Enterprise then registered its judgment in New York and sought to garnish shares of Landmark stock supposedly in the possession of the Depository Trust Corporation (DTC), which Landmark had previously attached in Missouri. This action prompted Landmark to request an injunction halting Enterprise's New York activities. This Court granted the injunction and granted Enterprise's motion to consolidate the two cases to resolve the dispute regarding the validity of Landmark's prejudgment attachment. See Enterprise Bank v. Saettele, 804 F.Supp. 1111, 1113 (E.D.Mo.1992).
This Court subsequently ruled that (1) Enterprise was barred from bringing an independent action due to its failure to appeal the denial of its motion to intervene in the Landmark action; (2) the Court lacked jurisdiction to consider Enterprise's constitutional attack on Mo.Rev.Stat. § 521.010(1) because the attachment was valid under Mo.Rev.Stat. § 521.010(5); (3) Enterprise lacked standing to challenge the attachment; and (4) the garnishment of Gustave Saettele's account at Oppenheimer was effective as to the Landmark stock. Id. at 1114-15. The United States Court of Appeals for the Eighth Circuit vacated this Court's judgment on the ground that this Court lacked jurisdiction to consolidate the two cases. Enterprise Bank v. Saettele, 21 F.3d 233 (8th Cir.1994). The opinion did not address the merits of this Court's other rulings. Id. at 233-37.
Before addressing the merits of Magna's motion for summary judgment, the Court must resolve two preliminary issues raised by Enterprise. The first issue is whether the Court will take judicial notice of pleadings from the two prior cases in this Court and a bankruptcy case pending in the United States Bankruptcy Court for the Middle District of Florida, styled In re Gustave J. & Laura E. Saettele, No. 92-13727-9P7. Magna requested that the Court take judicial notice pursuant to Federal Rules of Evidence 201(c). Document 15. Enterprise maintains the request is overbroad and does not state with particularity the adjudicated facts the Court should judicially recognize. Document 21.
A Court may take judicial notice of records of related proceedings before the same Court. MacMillan Bloedel, Ltd. v. Flintkote Co. 760 F.2d 580, 587-88 (5th Cir. 1985); In re Kroh, 87 B.R. 1004, 1005 (Bankr.W.D.Mo.1988); Green v. Wyrick, 428 F.Supp. 732, 735 (W.D.Mo.1976). Accordingly, the Court will take judicial notice of the records of the two earlier actions in the Eastern District of Missouri for the purpose of establishing the facts leading up to this action. (Most of these facts are not in dispute.) The Court will also take judicial notice of the two orders entered in the bankruptcy proceeding in order to recognize the judicial acts taken and the subject matter of that litigation. See United States v. Jones, 29 F.3d 1549, 1553 (11th Cir.1994).
Second, Enterprise asserts that it has not had sufficient time to conduct the discovery necessary to respond adequately to Magna's motion for summary judgment. Magna's motion was filed on December 30, 1994. Document 14. On January 17, 1995, Enterprise requested that the Court grant it 90 days following the Court's ruling on Enterprise's motion to remand to respond to Magna's motion for summary judgment. Enterprise maintained that it needed the time to conduct "a limited amount of discovery" to determine whether the Saettele's stock was certificated or uncertificated. Document 19 at 2. Alternatively, Magna requested 20 days to respond following the Court's ruling on the motion to remand. Id. at 3. On January 18, the Court ordered Enterprise to respond to the summary judgment motion 20 days after the Court ruled on the motion to remand. Document 20. The Court denied the motion to remand on February 23, 1995. Document 25. Enterprise filed its response to Magna's motion for summary judgment on March 15, 1995. Document 31.
Thus, Enterprise had over two months to conduct discovery on this one issue while the motion for summary judgment was pending. The Court concludes that this is a sufficient period, given that this same issue was the subject of discovery in the prior action. Moreover, Enterprise has failed to show *1342 what specific facts further discovery might unveil. See Humphreys v. Roche Biomedical Lab., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993); Dempsey v. Arco Oil & Gas Co., 809 F.Supp. 437, 438 (E.D.La.), aff'd, 980 F.2d 1444 (5th Cir.1992).
Having disposed of the preliminary issues, the Court now turns to Magna's motion for summary judgment. In support of its motion, Magna argues: (1) Enterprise lacks standing to challenge the constitutionality of the prejudgment attachment; (2) this action is foreclosed because Enterprise failed to appeal the denial of its motion to intervene; (3) Enterprise's constitutional claims are based on hypothetical facts or lack merit; and (4) Magna's garnishment of the stock was proper.
Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court views the evidence and the inferences which may be drawn therefrom in the light most favorable to the nonmoving party. Adkison v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir.1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

1. Standing
Magna contends that Enterprise lacks standing to challenge the constitutionality of the attachment statute as it was applied against the Saetteles. As a general rule, an individual or entity does not have standing to assert the constitutional rights of third parties. Singleton v. Wulff, 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976); Carter v. Romines, 560 F.2d 395, 395 (8th Cir.1977) (per curiam), cert. denied, 436 U.S. 948, 98 S.Ct. 2854, 56 L.Ed.2d 790 (1978). This rule is not jurisdictional, however, and it may be disregarded when necessary to protect fundamental rights. Irving v. Clark, 758 F.2d 1260, 1267 (8th Cir.1985), aff'd, 481 U.S. 704, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987). "The Supreme Court has suggested two factors to be considered in determining when the third-party rule should be suspended: the relationship of the litigant to the person whose right he seeks to assert, and the ability of the third party to assert his own right." Id. Neither factor supports dispensing with the general rule in this case.
First, Enterprise did not have a close relationship with the Saetteles. They were adversaries in litigation concerning the Saetteles' default on a personal guaranty. Second, the Saetteles were capable of protecting their rights to the property Magna sought by prejudgment attachment. The Saetteles were notified of the prejudgment attachment and could have challenged the validity of the attachment in the course of the Landmark action. Enterprise does not have standing to challenge the attachment now simply because the Saetteles chose not to do so. Cf. Irving, 758 F.2d at 1267 (allowing heirs and devisees to challenge law prohibiting certain dispositions by devise or intestacy because "decedent cannot rise from the grave to assert his own rights"); Carter, 560 F.2d at 395-96 (assignee of person allegedly deprived of civil rights lacked standing to assert constitutional claims against alleged violators because aggrieved party could assert his own right).
Enterprise maintains that it has standing to challenge the attachment because it acquired a lien on the Saetteles' real estate and on their account at Oppenheimer & Co. in January 1992. Because of the allegedly unconstitutional prejudgment attachment, however, Magna's lien, which matured on February 18, 1992, related back to September 1991 and took priority over Enterprise's lien. Enterprise therefore maintains that its interest in the Saetteles' property was directly harmed by operation of the statute. Magna contends that Enterprise lacks standing to challenge the validity of the attachment because Enterprise had no right to the Saetteles' property at the time of the alleged deprivation.
"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *1343 Board of Regents v. Roth, 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972) (emphasis added). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Id. at 577, 92 S.Ct. at 2709. Enterprise correctly points out that a lien is a property interest protected by the Due Process Clause of the Fourteenth Amendment. See Verba v. Ohio Cas. Ins. Co., 851 F.2d 811, 814-15 (6th Cir.1988) (judgment creditor's specific judicial lien is property interest protected by Due Process Clause); Bankers Union Life Ins. Co. v. Floy Hanks & Mistwood, Inc., 654 S.W.2d 888, 889 (Mo.1983) (lien held by virtue of deed of trust is property protected by Due Process Clause). Enterprise ignores the fact that it did not obtain its lien until after the attachment occurred, however. Thus, at the time of the allegedly unconstitutional attachment, Enterprise had no right to the Saetteles' property.
Enterprise next contends that it now has standing to challenge the attachment pursuant to Missouri Supreme Court Rules 85.18 and 85.19, which govern the procedures to be followed in cases of multiple attachments. Rule 85.18 provides in part: "When the same property is attached in several actions by different claimants, the court shall determine the priority, validity, good faith, and force and effect of the different attachments, and may dissolve any attachment, wholly or partially, or make any such other order as may be required." Rule 85.19 states: "When the same property is attached by different claimants, the claimants may challenge any other attachment or make any defense to the underlying claim which the owner of the property could make."
These procedural rules are not sufficient to give Enterprise standing. They create no property interest in favor of Enterprise. Moreover, even assuming that these rules are sufficient to confer standing on Enterprise, they do not give Enterprise the right to bring an independent action attacking a prejudgment attachment more than three years after final judgment in the underlying action. Under Missouri Supreme Court Rule 85.14, an attachment may be dissolved at any time before final judgment. See Seltzer v. Baumruk, 825 F.Supp. 1434, 1437-38 (E.D.Mo.1993). Final judgment marks the completion of the attachment and the underlying suit. Any person claiming an ownership interest in attached property should intervene in attachment action. The failure to do so is fatal. McElfatrick v. Macauley, 15 Mo.App. 102, 105 (1884). Id.

2. Failure to Appeal
Magna also argues that summary judgment is warranted because Enterprise did not appeal the denial of its motion to intervene in the Landmark action. The Court agrees.
"[A]n order denying a motion to intervene as of right is a final appealable order." United States EPA v. City of Green Forest, 921 F.2d 1394, 1401 (8th Cir.1990), cert. denied, 502 U.S. 956, 112 S.Ct. 414, 116 L.Ed.2d 435 (1991). Enterprise attempted to intervene as of right in the Landmark action to challenge the validity of the prejudgment attachment prior to final judgment. Enterprise's motion asserted basically the same protected interests it now advances in this action. But the Court denied Enterprise's motion, Landmark Bank, 784 F.Supp. at 1441, and Enterprise did not appeal that order. Enterprise's failure to appeal the denial precludes Enterprise from challenging the validity of the attachment in this action and provides an independent basis for granting Magna's motion for summary judgment. See Cheyenne River Sioux Tribe v. United States, 338 F.2d 906, 911 (8th Cir.1964) (failure to appeal denial of intervention motion precluded subsequent independent action raising same issues asserted in motion to intervene), cert. denied, 382 U.S. 815, 86 S.Ct. 34, 15 L.Ed.2d 62 (1965); see also James v. Bellotti, 733 F.2d 989, 994 (1st Cir.1984).

3. Hypothetical Facts
Magna next argues that even assuming standing exists, Enterprise's constitutional challenge to the validity of the prejudgment attachment fails because the challenge is based on hypothetical facts. Enterprise initially challenged only the constitutional validity *1344 of Mo.Rev.Stat. § 521.010(1), which provides for prejudgment attachment without a hearing "[w]here the defendant is not a resident of the state." In response, Magna argued that the prejudgment attachment was valid under Mo.Rev.Stat. § 521.010(5), which allows for attachment without a hearing "[w]here the defendant is about to remove his property or effects out of this state, with the intent to defraud, hinder, or delay his creditors." Then, in its amended complaint, Enterprise alleged that the affidavit Magna submitted in support of the attachment did not meet the requirements of § 521.010(5) because the affiant, Richard C. Leuck, did not have personal knowledge that the Saetteles were removing property from the state with the intent to defraud, hinder, or delay their creditors.
The Lueck affidavit provided sufficient facts to support the attachment under Mo.Rev.Stat. § 521.010(5). Moreover, the affidavit satisfied Missouri Supreme Court Rule 85.03 and Mo.Rev.Stat. §§ 521.030, 521.060. These provisions require that the affidavit set forth facts showing the existence of one or more grounds for attachment enumerated in § 521.010 and the amount due. The affiant must simply have a reasonable belief in the existence of one or more statutory grounds for attachment. See Elliott v. McCormick, 323 Mo. 263, 19 S.W.2d 654, 659 (1929).
Lueck's affidavit specifically cited § 521.010(5). The affidavit states that the Saetteles owed Landmark over $1,000,000; that they had recently moved to Florida; that they had refused to provide personal financial information to Landmark; that they had sold and were in the process of selling assets in Missouri; and that Lueck believed the proceeds of the sales would not be available to satisfy Landmark's claim, but would be moved out of state. Lueck aff. at ¶¶ 6-8. As further support for the motion for prejudgment attachment, Landmark also submitted a newspaper article indicating that Gustave Saettele was selling off his Landmark stock. The Supreme Court has indicated that a prejudgment attachment is valid under such exigent circumstances. See Connecticut v. Doehr, 501 U.S. 1, 16, 111 S.Ct. 2105, 2115, 115 L.Ed.2d 1 (1991).
Enterprise argues, however, that Lueck's deposition testimony reveals that he did not have personal knowledge of the facts set forth in the affidavit. Missouri law prohibits this type of collateral challenge to an attachment affidavit. See Burnett v. McCluey, 92 Mo. 230, 4 S.W. 694, 696-97 (1887). Magna correctly points out that had the Saetteles attacked the affidavit as insufficient, Landmark would have had the right to amend the affidavit to cure any deficiency. See Avery v. Good, 114 Mo. 290, 21 S.W. 815, 816 (1893). The Saetteles' failure to make such a challenge precludes Enterprise from doing so at this late date.[5]

4. Landmark Stock
Finally, Enterprise maintains that the prejudgment attachment of the Landmark Bank stock was invalid under Missouri law because Landmark failed to seize the stock as required by Missouri Supreme Court Rule 76.06 and Mo.Rev.Stat. § 400.8-317(1). As with Enterprise's other arguments, this claim comes too late. Moreover, the Court rejected this argument in Enterprise's earlier action. See Enterprise, 804 F.Supp. at 1115.
Enterprise has submitted an affidavit from H. Eugene Bradford dated March 15, 1995, and argues that the affidavit shows the stock certificates could have been attached. In response, Magna has presented an affidavit from Bradford dated March 27, 1995, which Magna contends demonstrates that the stock was uncertificated and not subject to attachment.
The March 15 affidavit indicates that the Landmark stock was credited to the account of Cede & Co., a nominee of DTC, on the transfer books of Landmark. The shares *1345 were represented by a balance certificate registered in the name of Cede & Co. and retained by Landmark's transfer agent, Boatmen's Trust Company. DTC could have directed Boatmen's Trust Company to issue all or any part of these shares in certificate form in the name of Cede & Company. March 15, 1995 Bradford aff. at ¶ 5. The March 27 affidavit further explains that the Landmark stock owned by the Saetteles was certificated at one time, but the certificates were cancelled on June 27 and September 16, 1991 by Boatmen's Trust. March 27, 1995 Bradford aff. at ¶¶ 4-5. The shares previously represented by these certificates were reissued in uncertificated, book-entry form in the name of Cede & Co. Id. Between September 24 and December 20, 1991, Boatmen's Trust did not issue certificates representing the stock. Thus, no physical stock certificates representing the stock owned by the Saetteles existed during this period. Id. at ¶ 7. The balance certificate mentioned in the March 15 affidavit "is not a stock certificate capable of being negotiated, nor does it represent any particular shares of" Landmark stock. Id. at ¶ 8.
In view of the foregoing, the Court adheres to its previous conclusion that "[n]o certificates were susceptible to ready attachment and thus, Landmark could resort to attachment by garnishment." Enterprise, 804 F.Supp. at 1115. Therefore, as explained in this Court's prior order, the garnishment of Gustave Saettele's account at Oppenheimer & Co. was a valid method by which to attach the stock. Id.
Accordingly,
IT IS HEREBY ORDERED that Magna's motion for summary judgment, Document 14, is GRANTED. A separate judgment will be entered contemporaneously herewith.
NOTES
[1] Landmark became Magna following a merger between Landmark Bancshares Corporation and Magna Acquisition Corporation.
[2] The Honorable George F. Gunn, Jr. presiding.
[3] The Honorable Stephen N. Limbaugh presiding.
[4] One avenue Enterprise pursued was intervention in the Landmark action to challenge the prejudgment attachment. On February 18, 1992, however, the Court entered an order granting summary judgment in favor of Landmark and denying Enterprise's motion to intervene. Landmark Bank v. Saettele, 784 F.Supp. 1434 (E.D.Mo.1992). Enterprise did not appeal.
[5] In any event, Lueck's deposition testimony reveals a factual basis for his belief that the Saetteles were liquidating their assets and that the proceeds would not be available to Landmark. Lueck testified that he reached this conclusion because Mr. Saettele was selling his Landmark stock, had moved to Florida, and had closed all of his accounts at Landmark. Lueck Depo. at 23-24, 25-27.