_____

No. 95-3515
_____

Enterprise Bank,          *
                      *
      Appellant,    *
                      * Appeal from the United States
  v.               * District Court for the
                      * Eastern District of Missouri.
Magna Bank of Missouri,   *
                      *
      Appellee.     *

_____

Submitted:  June 11, 1996

Filed:  August 16, 1996
_____

Before MAGILL, Circuit Judge, HENLEY, Senior Circuit Judge, and
    DOTY,[*] District Judge.

_____

MAGILL, Circuit Judge.


This case involves a priority battle between two creditors,
Enterprise Bank (Enterprise) and Landmark Bank (Magna),[1] over the
assets of Gustave and Laura Saettele.  The district court[2]
concluded that Magna's September 1991 attachment of these assets
was valid, thereby giving Magna a lien superior to Enterprise's

_____

    *THE HONORABLE DAVID S. DOTY, United States District
    Judge for the District of Minnesota, sitting by
    designation.

    [1]Landmark Bank became Magna Bank of Missouri following a
merger between Landmark Bancshares Corporation and Magna
Acquisition Corporation.

    [2]The Honorable George F. Gunn, Jr., United States District
Judge for the Eastern District of Missouri.

lien created in December 1991.  We affirm.

**I.**

In order to secure loans from Enterprise and Magna, Gustave and Laura Saettele executed personal guaranties of these loans. This case involves efforts by Enterprise and Magna to enforce these guaranties, with each bank seeking to satisfy their respective judgments against the assets of the Saetteles, which are inadequate to satisfy both judgments.  The assets in dispute are Landmark Bancshares Corporation Stock (Landmark stock) in the Saetteles' account at Oppenheimer & Co. (Oppenheimer) and real property owned by the Saetteles.  Resolution of this priority battle turns on the validity of Magna's prejudgment attachment of these assets.

In March 1991, Enterprise filed suit in federal district court against the Saetteles to enforce the Saetteles' guaranty of the Enterprise loan (the Enterprise lawsuit).  In April 1991, Magna also filed suit in federal district court to enforce the Saetteles' guaranty of the Magna loan (the Magna lawsuit).

While each suit was pending, Magna learned that the Saetteles intended to sell some or all of their remaining Landmark stock.  On September 20, 1991, Magna moved the district court for a writ of attachment of the Saetteles' stock and other assets.  In support of its petition, Magna submitted the affidavit of Richard Lueck, Vice President of Magna.  In the affidavit, Lueck noted that attachment would be proper under Mo. Rev. Stat. § 521.010(1), which permits prejudgment attachment where the defendant is not a resident of Missouri, and Mo. Rev. Stat. § 521.010(5), which permits prejudgment attachment where the defendant is about to remove his property from the state, with the intent to hinder his creditors. The facts supporting each ground for attachment were included in the affidavit.  Based on the petition and affidavit, the petition for the writ of attachment was granted on September 20, 1991.

-2-

In December 1991, the district court handling the Enterprise lawsuit entered judgment in favor of Enterprise. During January 1992, to execute the judgment, Enterprise perfected liens upon the same assets owned by the Saetteles that Magna previously attached in September 1991. Shortly thereafter, Enterprise learned of Magna's prior attachment of those assets. Enterprise then sought to intervene in the continuing Magna lawsuit in order to challenge the validity of Magna's prejudgment attachment.

On February 18, 1992, the district court in the Magna lawsuit granted judgment in favor of Magna and against the Saetteles, and the court also denied Enterprise's motion to intervene. The court concluded that Enterprise sought intervention "as a judgment creditor, solely in order to protect whatever claim it may have against" the property previously attached by Magna. Mem. at 13-14 (Feb. 12, 1992), reprinted in Appellant's App. at 18-19. Because Enterprise "has no interest in the merits of [the Magna lawsuit] other than protecting and asserting a judgment lien against the same property attached by" Magna, the priority dispute was "better left for the state court to resolve." Id. at 14, reprinted in Appellant's App. at 19. Enterprise did not appeal this denial of intervention.

On April 7, 1992, Enterprise filed a motion in the district court to consolidate the Enterprise and Magna lawsuits for the purpose of challenging Magna's prejudgment attachment. This motion was granted, and on October 5, 1992, the district court entered an order upholding the attachment. See Enterprise Bank v. Saettele, 804 F. Supp. 1111 (E.D. Mo. 1992). Enterprise appealed, and the Eighth Circuit reversed on the ground that the order consolidating the two cases was improper. See Enterprise Bank v. Saettele, 21 F.3d 233, 236-37 (8th Cir. 1994). The panel did not reach the merits of the appeal.

On June 29, 1994, Enterprise initiated the current action by

filing a petition for declaratory relief in Missouri state court. In its petition, Enterprise sought a declaration that prejudgment attachment based solely on the out-of-state residence of the property owner is unconstitutional, or, alternatively, that the attachment of the Saetteles' stock was procedurally invalid. This case was removed to federal court.

Magna moved for summary judgment, on the grounds that: (1) Enterprise did not have standing to challenge the constitutionality of the attachment as it was applied against the Saetteles; (2) Enterprise did not appeal the denial of its motion to intervene in the Magna lawsuit, and thus it was precluded from bringing the present action; (3) the attachment was valid under Mo. Rev. Stat. § 521.010(5), which permits prejudgment attachment where the debtor is moving property out of state in an effort to hinder creditors, a ground for attachment found constitutional by Connecticut v. Doehr, 501 U.S. 1 (1991); (4) the Lueck affidavit provided sufficient facts to support attachment under § 521.010(5); and (5) Magna's attachment of stock was procedurally valid. This motion was granted on all grounds by the district court on August 16, 1995. See Enterprise Bank v. Magna Bank of Mo., 894 F. Supp. 1337 (E.D. Mo. 1995). This appeal followed.[3]

## II.

As a threshold matter, we must determine whether Enterprise's declaratory judgment action is barred by claim preclusion,[4] given

---

[3]In addition to the issues discussed below, Enterprise also claims that the district court erred when it took judicial notice of pleadings in earlier related proceedings in this litigation and that it erred by denying Enterprise's motion for an extension of discovery. After reviewing these claims, we conclude that they are without merit.

[4]Magna also asserts that Enterprise lacks standing to bring this claim. Missouri Rule of Civil Procedure 85.18 provides that when the same property is attached in several actions by

-4-

Enterprise's failure to appeal from the February 1992 denial of its intervention motion.  Magna contends that claim preclusion is applicable, relying on Cheyenne River Sioux Tribe of Indians v. United States, 338 F.2d 906 (8th Cir. 1964), cert. denied, 382 U.S. 815 (1965).  The district court agreed.  See Enterprise Bank, 894 F. Supp. at 1343.

In Cheyenne, the Cheyenne River Sioux Tribe (the Tribe) sought to intervene as of right in a condemnation proceeding between the United States and a tribe member, contending that, as the real party-in-interest, it was an indispensable party to the proceeding.  The district court denied this motion, holding that the Tribe's interests were adequately protected by the United States, and the Tribe did not appeal.  Due to its failure to appeal this ruling, the Tribe was bound by the district court's determination that it was not an indispensable party.  The Tribe then brought a separate action to have the judgment in the condemnation proceeding declared null and void, contending that the judgment was rendered in the absence of an indispensable party to the earlier proceeding.  The court held that the Tribe was precluded from raising this argument, noting that "the issue of indispensability was decided against [the Tribe] and res judicata bars further litigation of that issue between the same parties."  Cheyenne, 338 F.2d at 911.

Contrary to Magna's contention, Cheyenne does not hold that the failure to appeal the denial of a motion to intervene as of right will always preclude that party from bringing a new suit that raises the same underlying claims as did the motion to intervene.  Rather, Cheyenne holds only that failure to appeal the denial of a motion to intervene as of right will bar the party from later relitigating whether it was an indispensable party, see id. at 911,

_____

different claimants, the court shall determine the priority and validity of the attachments.  We assume without deciding that this is sufficient to grant standing to Enterprise to bring this action.

-5-

because the legal issue decided against it in denying intervention --the issue of indispensability--was the precise issue it sought to litigate again in the independent action. Nothing in <u>Cheyenne</u> suggests that its holding was to have any broader implications.

The facts of the present case do not fit within the limited holding of <u>Cheyenne</u>. Enterprise does not seek to relitigate whether it was an indispensable party to the <u>Magna</u> lawsuit; it does not seek to have the <u>Magna</u> judgment declared null and void. Rather, Enterprise merely seeks to litigate those claims that the <u>Magna</u> court refused to consider. Claim preclusion is therefore not applicable.

## III.

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. <u>See</u> <u>Adkison v. G.D. Searle & Co.</u>, 971 F.2d 132, 134 (8th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## A.

Enterprise contends that the district court erred in granting the summary judgment motion because a question of material fact exists as to whether the affidavit of Richard Lueck provided the district court with a sufficient basis to grant the prejudgment attachment to Magna. In support of this contention, Enterprise argues that (1) the affidavit does not set forth sufficient facts to warrant attachment, and (2) Lueck did not have a sufficient

foundation to support the allegations contained in his affidavit.

Under Rule 85.03 of the Missouri Rules of Civil Procedure, a party requesting a writ of attachment must file an affidavit stating (1) the nature and amount of the claim, and (2) facts showing the existence of one or more grounds for attachment. The affiant must simply have good reason to believe in the existence of one or more grounds for attachment. See Mo. Rev. Stat. § 521.060. The affiant need not be ultimately correct in his belief. See Elliott v. McCormick, 19 S.W.2d 654, 659-60 (Mo. 1929).

The affidavit at issue was sufficient to support attachment. It set forth the nature and the amount of the claim. As to facts showing the existence of a ground for attachment, the affidavit stated:

> 7. Defendants have refused and continue to refuse to provide personal financial information to Landmark as required by Landmark, the most recent occasion having occurred in the last few months.
>
> 8. Your affiant believes Defendants have sold and are in the process of selling assets located within this state. Your affiant believes that the net proceeds from any such sale of Defendants' assets will not be available to satisfy Landmark's claim, but instead the proceeds will be moved out of this state to Landmark's prejudice.

Aff. for Attach. at 2, reprinted in Appellee's App. at 24. These facts support attachment under Mo. Rev. Stat. § 521.010(5), which permits attachment where the defendant is about to move the property out of state with the intent to hinder his creditors.

Further, Lueck had a sufficient foundation to support the allegations in the affidavit. He spoke directly with attorneys for the holding company in which the Saetteles held their stock, who apprised Lueck on several occasions that the Saetteles were in the process of selling their stock. See Lueck Dep. at 19-23 (July 13,

1992), <u>reprinted in</u> Appellant's App. at 87-91. Lueck also had access to information concerning the Saetteles' bank accounts at the former Landmark Bank, from which he learned that the Saetteles had closed all of their accounts at that bank. <u>Id.</u> at 28, <u>reprinted in</u> Appellant's App. at 96. Given the availability of this information, we conclude that Lueck possessed good reason to believe the allegations set forth in the affidavit.

**B.**

Enterprise also contends that the attachment of the Landmark stock was procedurally deficient. Under Missouri law at the time, when stock is issued in certificate form,[5] then attachment of that stock requires actual seizure of the certificate. <u>See</u> Mo. Rev. Stat. § 400.8-317(1); Mo. R. Civ. P. 76.06. In this case, Magna did not seize the stock certificates, but instead attempted to levy on the stock by garnishing the Saetteles' account at Oppenheimer.

Magna counters that the stock was not certificated and was therefore not able to be attached. In support of this, Magna submitted a March 27, 1992 affidavit from H. Eugene Bradford, a vice president at Boatmen's Trust Company, which is the transfer agent for the Landmark stock. Bradford explained that the Landmark stock owned by the Saetteles was certificated at one time, but the certificates were cancelled on June 27 and September 16, 1991, by Boatmen's Trust. <u>See</u> Bradford Aff. at ¶¶ 4-5 (Mar. 27, 1992), <u>reprinted in</u> Appellee's App. at 310. The shares previously represented by these certificates were reissued in uncertificated, book-entry form in the name of Cede & Co. <u>Id.</u> Between September 24 and December 20, 1991, Boatmen's Trust did not issue certificates representing the stock, and thus no physical stock certificates representing the stock owned by the Saetteles existed

---

[5]A certificated security is represented by an instrument in bearer or registered form. Mo. Rev. Stat. § 400.8-102(1)(c).

during this period.  Id. at ¶ 7, reprinted in Appellee's App. at 311.

Based on the foregoing, we agree with the district court that "no certificates were susceptible to ready attachment and thus, [Magna] could resort to attachment by garnishment."  Enterprise Bank, 894 F. Supp. at 1345.  Therefore, the garnishment of the Saetteles' account at Oppenheimer was a valid method by which to attach the stock.

## IV.

Because the Lueck affidavit was sufficient to support attachment, and because the attachment of the stock was not procedurally defective, we affirm the decision of the district court.

A true copy.

        Attest:

            CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.