**SCHWING GmbH, Plaintiff,**

v.

**PUTZMEISTER, INC. and Putzmeister Aktiengesellschaft, Defendants.**

**Civil No. 98–2089(DWF/JMM).**

United States District Court,
D. Minnesota.

March 26, 2001.

David R. Fairbairn, John M. Weyrauch, Boris Zelkind, Michael J. Pape, Kinney & Lange, Minneapolis, MN, for Plaintiff.

Gina M. Tiefenthaler, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, MN, Walter M. Schey, Schey Law Office, San Francisco, CA, for Defendants.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter is before the undersigned United States District Judge pursuant to Defendants' Objections to the Report and Recommendation of the Magistrate Judge and Defendants' Motion for Summary Judgment. In the Complaint, Plaintiff alleges that Defendants infringed certain patents owned by Plaintiff. For the reasons set forth below, the decision of the Magistrate Judge is respectfully rejected and Defendants' motion for summary judgment is granted.

### Background

The Plaintiff in this action owns U.S. Reissue Patent No. 32,657 ("the '657 patent"), which issued on April 26, 1988. The '657 patent, which is a reissue of Patent No. 4,465,441 ("the '441 patent"), describes a resilient seal mechanism used in concrete pumps. A more complete description of the patent-in-suit may be found in this Court's Order of May 4, 1999. Essentially, however, the invention in the '657 patent employs a resilient sealing ring situated between a cutting ring (or "wear ring") and a shutter mechanism. The sealing ring is held in place by "retaining means," specifically annular flanges (or "annular extensions") which protrude from the cutting ring and shutter mechanism to form grooves in which the sealing ring is held.

The parties to this action were involved in prior litigation over the '657 patent in California. In October of 1989, the parties ended that dispute by entering into a Settlement Agreement. Under the terms of the Settlement Agreement, the Defendants agreed to discontinue manufacturing mechanisms with annular flanges on both the cutting ring and the shutter mechanism. However, Plaintiff waived all claims of infringement based on a design of the Defendants called the "Bastardring I"; the Bastardring I had an annular flange on the shutter mechanism, but not on the cutting ring, and it provided for an optional metal insert.

Defendants later produced a product known as "Bastardring II." Bastardring II has an annular flange on the cutting ring, but not on the shutter mechanism. In addition to the annular flange on the cutting ring, the sealing ring is further stabilized by an embedded metal ring. The Bastardring II is the primary subject of this litigation.

Defendants have also produced a modified version of the Bastardring II, which is also alleged to infringe the '657 patent. This modified Bastardring II does not contain an embedded metal ring. Instead, the surface of the shutter mechanism which abuts the sealing ring is corrugated; small

concentric ridges in the surface of the shutter mechanism help to prevent the sealing ring from slipping out of place. This newer version of the Bastardring II is generally referred to as the "grooved shutter mechanism" because of the corrugation on the shutter mechanism.

## Discussion

### 1. Report and Recommendation

In June of 2000, Plaintiff brought a motion to exclude certain evidence and to preclude certain legal arguments before Magistrate Judge John M. Mason. Specifically, Plaintiff made two arguments. First, Plaintiff argued that Defendants should be precluded from arguing that the Bastardring II lacks two elements (a "spring means" and a "first means for retaining") which are set forth in the '657 patent; Defendants failed to identify these elements of the patent claims when originally asked to identify the elements of the claims which were alleged to be absent from the Bastardring II, and the theory was only expressed in an expert report proffered by Defendants' experts near the close of discovery. Second, Plaintiff argued that Defendants should be precluded from arguing prosecution history estoppel based on "Paper 10" of the prosecution history of the '441 patent; this theory was not advanced until at or after the close of discovery.

Magistrate Judge Mason properly construed the Plaintiff's motion as a motion *in limine* which is within the jurisdiction of the District Court. Magistrate Judge Mason issued a Report and Recommendation recommending that the District Court grant Plaintiff's motion. Defendants have objected to that Report and Recommendation. The Court has conducted a *de novo* review of the record. 28 U.S.C. § 636(b)(1); Local Rule 72.1(c).

 "Exclusion of evidence is a harsh penalty, and should be used sparingly."

*ELCA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.,* 53 F.3d 186, 190 (8th Cir.1995). The Court agrees with Magistrate Judge Mason's observation that exclusion of evidence may, in some circumstances, be an appropriate response to the untimely disclosure of legal and factual theories. Indeed, the Court notes that this case may well fall in the "grey area," where it would be within the Court's discretion to grant Plaintiff's motion and exclude the evidence at issue.

However, the Court finds that, even if the Court has discretion to grant Plaintiff's motion, it is not appropriate to do so in this instance, notwithstanding the recommendation set forth in Magistrate Judge Mason's Report and Recommendation. When all of the relevant factors are carefully scrutinized by the Court, the Plaintiff's motion must be respectfully denied. The Court evaluated the importance of the excluded evidence; the explanation of the Defendants for their conduct; the potential prejudice to the Plaintiff if the evidence is allowed; and the availability of other remedies to cure any prejudice, including the reopening of discovery or a continuance, in reaching its decision. While this Court will never countenance last day or last minute disclosures by any party, there is no evidence in the record before this Court to suggest Defendants proceeded in bad faith, deliberately violated any order of the Court, somehow misrepresented or otherwise obscured their theory of the case to the Plaintiff or this Court, or attempted to ambush the Plaintiff or this Court. Even if the Court were to have concluded, which it has not, that Defendants' conduct was an example of misguided trial strategy or overzealous advocacy, the appropriate remedy, when all factors are considered, would not be exclusion of the evidence, for the reasons stated. Plaintiff is not unduly prejudiced by the late disclosure of these legal theories:

at the time of the motion hearing before Magistrate Judge Mason, no trial date had been set, and the Court cannot conceive that these late disclosures will necessitate extensive additional discovery or substantially delay the trial. Moreover, to the extent that some additional discovery is necessary as a result of these newly advanced legal theories, the Plaintiff may be entitled to less drastic remedies, such as reimbursement for fees and costs associated with that additional discovery and any concomitant amendments to the scheduling order.

Weighing the limited prejudice to the Plaintiff against the potential prejudice to the Defendants (which is exacerbated by the importance of the facts Plaintiff seeks to exclude) and the interests of justice (which are broad given that this litigation involves interpretation of a patent and thus implicates the rights and obligations of individuals other than these immediate parties), the Court finds that Plaintiff's motion to exclude must be denied. Based upon the record before the Court, the Court therefore respectfully rejects the Report and Recommendation of the Magistrate Judge, despite its careful reasoning.

## 2. Summary Judgment Motion

In an earlier Order, this Court granted Defendants' motion for summary judgment as to Plaintiff's claim of literal infringement of the '657 patent with respect to the Bastardring II device, but denied that motion as to Plaintiff's claim for infringement pursuant to the doctrine of equivalents. Defendants have now brought a second motion for summary judgment on Plain-

tiff's doctrine of equivalents claim with respect to the Bastardring II device. At the outset, the Court notes that the record has changed little since the Court's earlier ruling. Accordingly, most of the Defendants' arguments have already been addressed by the Court. The Court will limit its analysis to the one issue with regard to which the record has changed considerably.[1]

In addition, Defendants have moved for summary judgment on Plaintiff's claim that the modified Bastardring II, the so-called "grooved shutter mechanism," infringes the '657 patent.

## A. Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri,* 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R.Civ.P. 1. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to

---

1. Defendants assert that summary judgment is appropriate for four reasons: (1) the Court's earlier ruling of no literal infringement requires a finding of no equivalence where, as here, the allegedly infringed element is a means-plus-function claim; (2) the settlement agreement between the parties demonstrates a common understanding be- tween the parties that an embedded metal ring and an annular flange are not equivalent; (3) the hypothetical patent claims asserted by Plaintiff are legally inadequate; and (4) assertions contained in Paper 10 of the prosecution history estop any claim of infringement. In this Order, the Court addresses only this last argument.

judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik*, 47 F.3d at 957.

### B. Prosecution History Estoppel and the Bastardring II

 Defendants argue that Plaintiff is estopped from asserting a claim under the doctrine of equivalents because Plaintiff surrendered any claim to a device without two annular flanges during the prosecution of the '441 patent. A Plaintiff in a patent suit may not use the doctrine of equivalents to reclaim subject matter which was clearly relinquished during the prosecution of his patent. *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed.Cir.1995). Whether prosecution history estoppel applies is a question of law. *See id.*

During the prosecution of the '441 patent, the Patent and Trademark Office ("PTO") rejected the Plaintiff's application as obvious in light of the Schlect 4,382,752 patent ("the '752 patent"). The Plaintiff responded in file wrapper paper no. 10. In that response, the Plaintiff sought to distinguish between its invention and the Schlect device. The '752 patent disclosed a sealing ring which was very much like the sealing ring described in the '441 patent (and now '657 patent).

The Plaintiff noted that with the Schlect device, however, "a mechanical compression of the elastic ring creates very small axial forces, since the seatings allow the flexible ring of Schlecht to deflect along the whole axial length of its inner surface." Defendants' Ex. 13, p. 11. In other words, the sealing ring disclosed in the Schlect patent was retained solely by compression between the wear ring and the shutter mechanism; because there was nothing to prevent the elastic sealing ring from expanding perpendicularly to the wear ring and the shutter mechanism (in a radial direction), the sealing ring did not urge the wear ring towards the face plate (i.e. the sealing ring does not function as a spring means).

The Plaintiff went on to argue to the PTO that the invention described in the '441 patent differed from the Schlecht device because it dramatically reduced the ability of the elastic ring to expand radially. Specifically, the Plaintiff noted that the invention described in the '441 patent had two features the Schlecht device lacked: (1) in the '441 patented device, the shutter mechanism and the cutting ring are fashioned to provide jointly a support surface for one of the radial surfaces of the sealing ring and (2) in the '441 patented device, the sealing ring is constrained along the second radial surface by the annular flanges extending from the shutter mechanism and wear ring. In other words, the annular flanges are a means for retaining the sealing ring in its proper position *and* a means for preventing the sealing ring from unduly expanding in a radial direction, thereby lessening the axial force exerted by the spring means.

In short, to overcome a challenge to patentability, the Plaintiff distinguished its invention from the prior art, the '752 patent, by noting that Plaintiff's invention provided strong axial forces, and the presence of two annular flanges was a critical component of that feature of the Plaintiff's invention.[2] A competitor reading this

---

**2.** The Court does note that the very explicit language quoted by Defendants in their brief,

prosecution history would reasonably conclude that Plaintiff intended to relinquish any claim to a device in which the ends of the sealing ring were retained by any means other than an annular flange, *see Haynes Int'l, Inc. v. Jessop Steel Co.,* 8 F.3d 1573, 1578 (Fed.Cir.1993); any means other than an annular flange would fail to prevent radial expansion of the sealing ring. The Court therefore concludes that Plaintiff's claim for infringement under the doctrine of equivalents is barred by prosecution history estoppel.

### C. The Grooved Shutter Mechanism

■ Plaintiff has further alleged that the Defendants' newer version of the Bastardring II, the grooved shutter mechanism, infringes the '657 patent. Defendants contend that the grooved shutter mechanism does not literally infringe the '657 patent because it does not include a "second seating for the second end of the spring means on the shutter mechanism which includes an annular extension which partly overlaps the second side of the spring means in the axial direction . . . ." However, the corrugation of the surface of the shutter mechanism results in a series of grooves and ridges on the shutter mechanism; the ridges on the shutter mechanism could be construed as "annular extensions," albeit abbreviated ones. Furthermore, although the pictures and drawings do not present a clear picture of the

relationship between the sealing ring (the "spring means") and the bottom-most ridge of the shutter mechanism, Plaintiff's expert John Hunter has opined that, *in situ,* the last ridge of the shutter mechanism would extend a very short distance along the second side of the sealing ring. Dec. of John Hunter, ¶ 11.

As noted above, the prosecution history of the '441 and '657 patents indicates that the annular extensions distinguish the Plaintiff's invention from the prior art because they prevent or limit radial expansion of the sealing ring to facilitate axial force on the wear ring. Thus, as discussed at greater length above, the prosecution history of the '441 patent demonstrates that Plaintiff relinquished any claim to a "means for retaining" the sealing ring in place which does not inhibit radial expansion of the sealing ring.

Defendants' expert, Professor Charles A. Garris, opines that "[t]he 0.5 mm groove [on the grooved shutter mechanism] does not and cannot restrain the seal from expanding in the radial direction . . . ." Dec. of Prof. Charles A. Garris, ¶ 3. Plaintiff has not come forward with any evidence whatsoever to rebut this contention. In light of this uncontroverted evidence, the Court finds that the doctrine of prosecution history estoppel bars Plaintiff's claim that the grooved shutter mechanism infringes the '657 patent.[3]

---

"the present invention provides substantial axial resilient forces which urge the cutting ring toward the face place because both the first and second ends and the first side are engaged by solid surfaces," does not refer to the annular flanges. The "first side" is engaged by a solid surface formed by the wear ring and the shutter mechanism themselves. The annular flanges extend along the *second side* of the sealing ring. The totality of the discussion, however, makes it clear that the annular flanges also serve to prevent radial expansion and thus facilitate "axial resilient forces."

3. Plaintiff asserts that, at a minimum, a claim for infringement under the doctrine of equivalents should survive this motion; Defendants argue that Plaintiff has not raised the doctrine of equivalents with respect to the grooved shutter mechanism in a timely fashion. The Court notes that any claim under the doctrine of equivalents would fail for the same reason that Plaintiff's claim for literal infringement fails: the prosecution history of the patent in suit makes clear that the Plaintiff relinquished any claim to a device in which the means for retaining the sealing ring does not also inhibit radial expansion of that ring.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Exclude Expert Evidence (Doc. No. 133) is **DENIED;**

2. Defendants' Motion for Summary Judgment (Doc. No. 155) is **GRANTED;** and

3. The **COMPLAINT** is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED AC-CORDINGLY.**