**HONEYWELL INC., a Delaware corporation, Plaintiff,**

v.

**VICTOR COMPANY OF JAPAN, LTD., a Japanese corporation and U.S. JVC Corp., a New York corporation, Defendants.**

**No. CIV 99–1607(DWF/AJB).**

United States District Court,
D. Minnesota.

March 29, 2001.

John Adkisson, Matthew Woods, Martin Lueck, Robins Kaplan Miller & Ciresi, Minneapolis, MN, for Plaintiff.

Michael Berger, Charles Macedo, Anthony Lo Cicero, Amster Rothstein & Ebenstein, New York, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

FRANK, District Judge.

### Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on December 15, 2000, pursuant to Defendants' Motion for Partial Summary Judgment. This litigation involves Plaintiff's contention that Defendants have infringed U.S. Patent No. 4,425,501, which is owned by Plaintiff. For the reasons set forth below, Defendants' motion is granted.

### Background

This litigation involves a claim by Plaintiff Honeywell, Inc. ("Honeywell") that a component of certain camcorders manufac-

tured by Defendant Victor Company of Japan, Ltd., and its United States subsidiary, Defendant U.S. JVC Corp. (collectively "JVC"), infringe Honeywell's patent rights.

Honeywell owns the rights to United States Patent No. 4,425,501 ("the '501 patent"). The '501 patented invention, titled a "Light Aperture For A Lenslet Photodetector Array," is a masking mechanism used to block the intrusion of unwanted light in the operation of autofocus cameras, video cameras, and camcorders. In a previous Order (Doc. No. 103), this Court has defined the scope of the '501 patent.

As described in the background of the '501 patent, autofocus systems for cameras, video cameras, and camcorders fall into one of two broad categories: active systems (in which a beam of light or sound is transmitted from the camera and the reflection of that light or sound energy off of the object is processed by the camera circuitry) and passive systems (in which light energy from the object is received by the camera where it produces radiation patterns on internal detectors, and these radiation patterns are processed by the camera circuitry to effectively "triangulate" the position of the object). The '501 patent deals exclusively with particular problems which have developed in the operation of passive autofocus systems.

Specifically, one type of passive autofocus system involves light energy from the remote object passing through the objective lens of the camera and then through a plurality of "lenslets" which are molded in a piece of translucent material (together, the "lenslet array"). The lenslets direct the light energy onto detectors. The relative radiation patterns of the detectors are processed by the camera circuitry; a particular balance in the relative radiation patterns results from the remote object being in focus. The detectors which receive the light energy from the lenslets are typically part of an integrated circuit chip (in other words, they are part of a single component which also includes circuitry).

There are two problems with this system, both of which derive from the nature of the material out of which the lenslets are molded, which the '501 patent addresses. First, light from the objective lens passes directly through the transparent medium, in between the molded lenslets, and strikes the circuitry portion of the integrated circuit chip on which the detectors are located. Because some of the circuitry is light sensitive, the light passing through the translucent medium can generate stray signals which result in focusing and other errors. Second, surface defects and imperfections in the translucent medium adjacent to the lenslets can reflect and scatter light from the objective lens; as a result, light may reach the detectors without having passed through the lenslets. These stray signals reaching the detectors interfere with the proper "triangulation" function of the detectors and may produce additional errors.

The '501 patent addresses these problems by proposing a masking means, an opaque structure with small apertures which prevents light from passing through the translucent material of the lenslet array at any point other than through the lenslets themselves. The preferred embodiment describes a grid-like structure of opaque material, through the holes of which the lenslets protrude. Thus, the solid portion of the grid-like mask forms a barrier between the light source (the camera's objective lens) and all portions of the lenslet array other than the lenslets themselves.

The '501 patent consists of a single independent claim and three dependent claims. The independent claim, allegedly infringed by the Defendants, reads:

Apparatus for use with an auto focus camera including a circuit chip having a plurality of radiation responsive detector areas and a circuit area adjacent the detector areas which circuit area may produce error signals for the auto focus camera if exposed to light and including a transparent member having a plurality of lenslets formed therein and placed contiguous the chip so that each lenslet directs radiation from a remote source onto one of the detector areas, the improvement comprising:

> an opaque member having a plurality of transparent portions therein placed contiguous the transparent member so as to permit radiation through the lenslets to reach the detector areas and to prevent radiation through the transparent member from reaching the circuit area.

The allegedly infringing device produced by JVC is an imaging chip consisting of all of the basic components outlined in the '501 patent. However, the JVC chips do not have an opaque structure or other masking means on top of the lenslet array. Rather, the JVC chips have a masking means to prevent light from reaching the photo-sensitive circuitry located on the integrated chip, but that masking means is embedded in the chip itself, interposed between the circuitry of the integrated chip and the translucent material containing the lenslet array.

Defendants allege that this difference in structural order places the allegedly infringing device well outside the scope of the patent claims. Defendants further argue that the accused device does not infringe the '501 patent under the doctrine of equivalents. Defendants have thus moved for summary judgment of noninfringement.

## Discussion

### 1. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed.R.Civ.P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Krenik*, 47 F.3d at 957.

### 2. Literal Infringement and the Doctrine of Equivalents

In an earlier Order, this Court construed the '501 patent as requiring the presence of three elements (an integrated circuit chip with photo-detectors, a translucent member incorporating a lenslet array,

and a masking means) in a particular structural order. (Doc. No. 103.) The Court's conclusion was based on its reading of the claim language in light of the patent specification. The specification of the '501 patent clearly states that "[w]hile the mask 30 could be placed adjacent the circuit board 10 and under the lenslet member 20 to likewise mask out the circuit areas on the chip 10, this arrangement would not help the problem of imperfections in the surface of member 20 causing scattering of light to strike other detectors." ('501 Patent at Col. 2, line 65—col. 3, line 2) "This is therefore a clear case of disclaimer of subject matter that, absent the disclaimer, could have been considered to fall within the scope of the claim language." *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.,* 242 F.3d 1337, 1344–45 (Fed.Cir.2001). Given that the JVC imaging chip has a mask which is essentially under the lenslet—an embodiment expressly criticized in the patent specification—the Court finds that the accused device does not literally read on the '501 patent.

■ Moreover, the Court finds that the Plaintiff cannot, through the doctrine of equivalents, recapture subject matter which it has disclaimed in the patent itself. The Federal Circuit recently considered a case in which, like this case, the accused device embodied a structure which had been explicitly criticized in the patent specification:

> Having specifically identified, criticized, and disclaimed the dual lumen configuration, the patentee cannot now invoke the doctrine of equivalents to "embrace a structure that was specifically excluded from the claims." A particular structure can be deemed outside the reach of the doctrine of equivalents because that structure is clearly excluded from the claims whether the exclusion is express or implied.

*Id.* at 1345 (citations omitted). The Court concluded that the patentee could not make a claim under the doctrine of equivalents against a device which employed a design specifically criticized in the patent specification as inferior to the patented device.

Here, JVC's imaging chip employs a design which was "specifically identified, criticized, and disclaimed" in the '501 patent specification. The Court concludes that Honeywell cannot now seek to recapture that material which it has expressly disclaimed in the specification.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Partial Summary Judgment (Doc. No. 73) is **GRANTED.**