ST. CROIX PRINTING EQUIPMENT, INC., Plaintiff,

v.

Debbie SEXTON, St. Croix Printing Equipment Imports, Ltd., Shinohara USA, Inc., and Shinsuke Kubota, Defendants.

Civil No. 06–4273 (PAM/JSM).

United States District Court, D. Minnesota.

May 30, 2008.

Jeffrey E. Grell, St. Paul, MN, for Plaintiff.

G. John Veith, Brown & Carlson, PA, Jon S. Swierzewski, Larkin Hoffman Daly & Lindgren Ltd., Minneapolis, MN, Anthony J. Bruozas, Gerald L. Morel, Masuda Funai Eifert & Mitchell Ltd., Chicago, IL, for Defendants.

## MEMORANDUM AND ORDER

PAUL A. MAGNUSON, District Judge.

This matter is before the Court on Plaintiff's Motion for Summary Judgment on Counterclaims brought by Defendant Shinohara USA, Inc. For the reasons that follow, the Court grants the Motion.

### BACKGROUND

Plaintiff St. Croix Printing Equipment, Inc., sells used commercial printing presses. Plaintiff's principals are John Diana and his son, Blake; the business is located in Stillwater, Minnesota. In the early 1980s, John Diana ("Diana") and Defendant Debbie Sexton together owned a company also called St. Croix Printing Equipment, Inc. In 1989, Diana and Sexton had a parting of the ways and Sexton opened her own business, called St. Croix Printing Equipment Imports, Ltd. This business is located in Iowa. Diana retained the St. Croix Printing Equipment, Inc. name, and after a bit of litigation, the parties apparently agreed to live and let live.

Sexton's business ("St. Croix Iowa") is an authorized dealer for new printing presses manufactured by the Japanese parent company of Defendant Shinohara USA, Inc. ("Shinohara"). Plaintiff ("St. Croix Minnesota") sells various brands of used printing presses, among them used Shinohara printing presses.[1] St. Croix

---

1. In its Opposition Memorandum, Shinohara contends that St. Croix Minnesota does not sell only used Shinohara presses but also sells new Shinohara presses. In support of this statement, Shinohara cites the deposition of Gregory Ries, a technician who installed Shinohara presses for St. Croix Minnesota. Ries's testimony does not support Shinohara's contention. Indeed, in response to the question whether St. Croix Minnesota sells new Shinohara presses, Ries said, "No." He then explained that St. Croix Minnesota "will sell ones that are demos and stuff which have been out very shortly.... And they're the latest state of the art. It's brand-new. It's got a few miles on it, but it's essentially the latest technology." (Bruozas Decl. Ex. I (Ries Dep.) at 118.)

Minnesota is not an authorized Shinohara dealer.

In its Complaint, originally filed in Washington County and removed to this Court, St. Croix Minnesota contends that Defendants committed unfair, deceptive, and false trade practices. In particular, St. Croix Minnesota contends that Defendants approached customers who had contracted to purchase used printing presses from St. Croix Minnesota and told these customers false and misleading things about the used presses and about St. Croix Minnesota, causing the customers to break their contracts with St. Croix Minnesota and instead purchase new presses from St. Croix Iowa.

Shinohara's Counterclaims are mirror images of the claims in the Complaint. It contends that St. Croix Minnesota's dealings with the customers who are the subject of the Complaint (and perhaps other customers) constitute trademark infringement, trademark dilution [2] and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114 *et seq.*, unfair competition in violation of Minnesota common law, and deceptive trade practices in violation of the Minnesota Deceptive Trade Practices Act ("DTPA"), Minn.Stat. §§ 325D.43 *et seq.*

## DISCUSSION

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir.1996). However, "summary judg-

ment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 323, 106 S.Ct. 2548; *Enter. Bank,* 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Lanham Act and DTPA

In relevant part, the Lanham Act proscribes the use in commerce of

any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1). Similarly, the Act prohibits the

(a) use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection

---

**2.** The only remedy for trademark dilution under the Lanham Act is an injunction. 15 U.S.C. § 1125(c). However, Shinohara has abandoned its request for injunctive relief, and thus the Court presumes that it has abandoned its trademark dilution claim.

with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . . .

*Id.* § 1114(1). For its part, the DTPA makes it an actionable deceptive trade practice to:

(1) pass[ ] off goods or services as those of another;

(2) cause[ ] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) cause[ ] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4) use[ ] deceptive representations or designations of geographic origin in connection with goods or services;

(5) represent[ ] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

(6) represent[ ] that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) represent[ ] that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) disparage[ ] the goods, services, or business of another by false or misleading representation of fact; . . . or

(13) engage[ ] in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn.Stat. § 325D.44. Because Shinohara is seeking only money damages it is required to prove actual confusion, the alleged infringer's intent to cause that confusion, and a causal connection between the confusion and the injury suffered. *LensCrafters, Inc. v. Vision World, Inc.*, 943 F.Supp. 1481, 1489 (D.Minn.1996) (Davis, J.); *see also Wilson v. Polaris Indus., Inc.*, No. C7–98–676, 1998 WL 779033, at *1 (Minn.Ct.App. Nov. 10, 1998) (noting that proof of actual damages is "essential element" of DTPA and false advertising claims).

## C. Shinohara's Allegations

As outlined in Shinohara's Memorandum in Opposition to St. Croix Minnesota's Motion, Shinohara's Counterclaims rest on the following allegations: (1) until November 2007, St. Croix Minnesota's website contained Shinohara's logo and trademark; (2) the website also contained several false representations about St. Croix Minnesota's inventory, warehouse space, the number of years St. Croix Minnesota has been in business, and that there were "factory trained technicians" on the staff of St. Croix Minnesota; (3) Diana allegedly tells customers that he sells Shinohara presses and that he can get anything the customer needs from Shinohara (Bruozas Decl. Ex. I (Ries Dep.) at 117–18); (4) St. Croix Minnesota copied software from English-language Shinohara presses to Japanese-language Shinohara presses, in particular at Tandem Printing; (5) St. Croix Minnesota stated to Impressive Print that it could get parts for a used Shinohara press directly from Shinohara; (6) Diana made other statements to Impressive Print in an attempt to "buttress his scam of being a Shinohara rep" (Opp'n Mem. at 13); (7) Diana asserted in this litigation that he obtained an English-language memory card for Shinohara presses from licensed Shinohara dealers, but those dealers deny selling any parts to St. Croix Minnesota; (8) St. Croix Minnesota attempted to sell a damaged Shinohara press to John Schuster without disclosing that the press was damaged and likely unusable; and (9) St.

Croix Minnesota included in the contract with Schuster a charge for "delivery, installation and training by Shinohara with print and register warranty" (Schuster Dep. Ex. 200).

Very few of these factual allegations are relevant to Shinohara's claims under the Lanham Act or the Minnesota law of unfair competition or deceptive trade practices. Even taken in the light most favorable to Shinohara, facts such as the alleged copying of software and Diana's statements in this litigation about where he obtained the software are not relevant to whether customers were confused as to the origins of the presses St. Croix Minnesota sold or about St. Croix Minnesota's relationship with Shinohara.

Similarly, the allegedly false statements on St. Croix Minnesota's website that it had a warehouse and an inventory of presses and that it employed factory-trained staff[3] may be false, but Shinohara makes no attempt to explain how those allegedly false statements violated the Lanham Act, which prohibits the misuse of trademarks; or the DTPA, which in relevant part prohibits false statements regarding the origin of goods or services. Minn.Stat. § 325D.44, subds. 1(1)-(8), (13). Shinohara would like to stop St. Croix Minnesota from importing and selling used Japanese-language presses. However, not only has Shinohara not pointed to any law prohibiting St. Croix Minnesota's activities, in its Counterclaims Shinohara has not cited any law authorizing such relief.

Only four of Shinohara's allegations support the causes of action in the Counterclaims: (1) St. Croix Minnesota's use on its website of the Shinohara logo and trademark; (2) the allegation by Ries, a Shinohara service technician, that St. Croix Minnesota presented itself to potential customers as having access to "everything Shinohara" (Bruozas Decl. Ex. I (Ries Dep.) at 118); (3) statements Diana made to Impressive Print that "gave a definite impression that St. Croix [Minnesota] had a direct relationship with Shinohara" (Opp'n Mem. at 13); and (4) the language in the Schuster contract that delivery, installation, and training would be provided by Shinohara.

### 1. Website

There is no dispute that St. Croix Minnesota removed Shinohara's logo and trademark from its website shortly after Shinohara demanded that it do so and prior to Shinohara filing its Counterclaims. Although the unauthorized use of Shinohara's trademark on St. Croix Minnesota's website may have violated the Lanham Act, Shinohara has not established that it suffered any damage as a result. Moreover, it is Shinohara's burden to show that the unauthorized use of its trademark was "likely to cause confusion." 15 U.S.C. §§ 1114(1), 1125(a)(1). Indeed, because Shinohara seeks money damages for the alleged violations of the Lanham Act and related state statutes, Shinohara must establish actual confusion. *LensCrafters, Inc.*, 943 F.Supp. at 1489. Shinohara has offered no evidence whatsoever that St. Croix Minnesota's website confused any customers or even was likely to confuse any customers. Nor has Shinohara come forward with any evidence that it suffered damage as a result of the unauthorized use of its mark, as it is required to do. *Id.* St. Croix Minnesota is entitled to summary judgment on this claim.

### 2. Gregory Ries

Gregory Ries is a Shinohara service technician who occasionally installed Shi-

---

**3.** Shinohara does not allege that the website said that St. Croix Minnesota staff were trained by Shinohara or otherwise mentioned Shinohara in connection with the statements regarding St. Croix Minnesota's employees.

nohara presses for St. Croix Minnesota. According to Shinohara, Ries has witnessed "deliberate customer confusion caused by [St. Croix Minnesota]." (Opp'n Mem. at 8 n. 35.)

■ A full reading of Ries's deposition testimony does not support Shinohara's contention that St. Croix Minnesota intended to and did cause actual confusion as to its relationship with Shinohara. As an initial matter, none of Ries's testimony regarding confusion is specific to any particular customer. Rather, Ries testified that, in his opinion, Diana "tries to make it sound like he is a dealer and that there's some type of connection." (Bruozas Decl. Ex. I (Ries Dep.) at 52.) Ries also testified, "I can't say he's ever stated, hey, I am Shinohara Chicago [sic], but the implication has always been there." (*Id.* at 53.) It is far from clear, however, whether the statements to which Ries testified were statements intimating a connection between St. Croix Minnesota and Shinohara or statements intimating a connection between St. Croix Minnesota and St. Croix Iowa. (*See id.* ("[L]ike I said, it's all in the name. It's confusing to a lot of customers.... [I]t's the No. 1 question I get. Well, is that—is that St. Croix the same company as the one in Iowa?").) Confusion between St. Croix Minnesota and St. Croix Iowa is not relevant to Shinohara's trademark claims.

More importantly, however, none of Ries's testimony establishes that any particular customer was in fact confused as to whether St. Croix Minnesota was connected to Shinohara. At best, his testimony shows that, in his opinion, Diana tried to imply such a connection. This evidence is insufficient to raise a genuine issue of material fact as to actual confusion.

### 3. *Impressive Print*

David Haugland is the owner of Impressive Print, Inc., in St. Paul. In 2002, Impressive contracted to buy from St. Croix Minnesota a used printing press manufactured by Ryobi. When St. Croix Minnesota was unable to acquire the Ryobi press, the parties agreed that Impressive Print would instead purchase a used Shinohara press that St. Croix Minnesota would import from Japan. In negotiating the change to the contract, Diana allegedly told Haugland that St. Croix Minnesota was able to get parts for the Shinohara press directly from Shinohara in Japan. When Impressive asked Diana some technical questions about the press's operation, Diana responded with what he termed "the official factory response." (Haugland Decl. Ex. 5.) In response to an earlier question, Diana stated, "This is the reply from Japan...." (*Id.*) According to Haugland, these statements "gave a definite impression that St. Croix Minnesota had a direct relationship with the manufacturer Shinohara in Japan." (*Id.* ¶ 7.)

Haugland's deposition testimony, however, is not as unequivocal. He testified that Diana never told him that St. Croix Minnesota was an authorized Shinohara dealer, but rather that Haugland made that assumption from Diana's statements that St. Croix Minnesota would sell a Shinohara press and be able to support the Shinohara press. (Grell Decl. Ex. 17 (Haugland Dep.) at 112.) Shinohara does not direct the Court to any of Haugland's deposition testimony that might rebut or explain this testimony, instead relying solely on Haugland's declaration. Whether the declaration impermissibly contradicts the deposition testimony on the matter of Haugland's confusion and Diana's intent to cause that confusion is a close question. *See, e.g., Wilson v. Westinghouse Elec. Corp.,* 838 F.2d 286, 289 (8th Cir.1988) (court "may grant summary judgment where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before").

However, even if Shinohara has raised a genuine issue of material fact as to whether Haugland was confused by Diana's statements and as to whether Diana intended to confuse Haugland about St. Croix Minnesota's relationship with Shinohara, it has failed to come forward with any evidence that it was injured by the alleged confusion. The evidence shows that Impressive Print did not ultimately purchase the used Shinohara press from St. Croix Minnesota, but rather purchased a new Shinohara press from St. Croix Iowa. Where, as here, a party seeks money damages for violations of the Lanham Act and related Minnesota statutes, that party must establish not only actual confusion, but also actual injury and a causal connection between the confusion and the injury. *LensCrafters*, 943 F.Supp. at 1489; *see also Wilson*, 1998 WL 779033, at *1. Shinohara's failure to raise a genuine issue of fact as to damages is fatal to its claims related to Impressive Print.

4. *Schuster*

In May 2006, John Schuster contracted with St. Croix Minnesota to buy a Shinohara press for his printing company in St. Louis Park, Minnesota. It is undisputed that the press at issue was cracked and, at least according to Shinohara, was not usable. It is also undisputed that Shinohara owned the press and that St. Croix Minnesota bought the press from an authorized Shinohara dealer in California. The contract between Schuster and St. Croix Minnesota contained the phrase: "Delivery, installation and training by Shinohara with print and register warranty." (Grell Decl. Ex. 24.) For the purposes of this Motion, St. Croix Minnesota concedes that Schuster could have been and was confused by the presence of this language.

After Schuster signed the contract, Sexton visited Schuster. She told Schuster that the press he had contracted to buy was cracked and that Shinohara would not warranty the press. Schuster ultimately cancelled the purchase agreement and bought a new Shinohara press from St. Croix Iowa.

Once again, Shinohara has not proved any damages from this aborted transaction. Indeed, Shinohara profited from the broken contract, because Schuster ultimately bought a new Shinohara press from a Shinohara-authorized dealer. Absent some showing of damages, St. Croix Minnesota's Motion must be granted.

**CONCLUSION**

Shinohara has failed to raise a genuine issue of material fact as to its Counterclaims. Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Docket No. 68) is **GRANTED**.